UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————

FRANCES O'LEARY,

                              Plaintiff,

                                                          AFFIDAVIT

        -against-

                                                          05 Civ. 6722 (HB)

NY STATE UNIFIED COURT SYSTEM,

                              Defendant.

—————————————————————

STATE OF NEW YORK
COUNTY OF ALBANY

                JOHN J. SULLIVAN, being duly sworn, deposes and says:


        1.      I am an Assistant Deputy Counsel in the Office of Court Administration

of the State of New York, and am of counsel to Michael Colodner, attorney for

defendant New York State Unified Court System. I submit this affidavit in support of

defendant's motion for summary judgment. The facts set forth in this affidavit are

based upon my personal knowledge, the books and records of the Office of Court

Administration ("OCA"), and conversations with officers and employees of the Unified

Court System.

Plaintiff's history of employment with the Unified Court System

2.    Plaintiff Frances O'Leary first became employed by the courts on
November 27, 1978, in the title of Uniformed Court Officer; she was assigned to the
New York City Criminal Court. On October 23, 1981, plaintiff was appointed to the
title of Senior Court Officer in the Supreme Court, New York County. Both of these
titles are security positions and are responsible for preserving and maintaining order
within court facilities and for responding effectively to any contingency that may
disrupt court operations. Copies of the title standards describing the duties and
responsibilities for the Uniformed Court Officer and Senior Court Officer titles are
annexed, collectively, as Exhibit "A."

3.    On September 22, 1983, plaintiff was appointed to the title of Senior
Court Clerk in Bronx County Surrogate's Court. On February 7, 1985, she was
appointed as a Senior Court Clerk in the New York City Civil Court. A Senior Court
Clerk serves as part clerk, i.e., courtroom clerk, and provides clerical support to
judges by swearing witnesses, polling jurors, maintaining custody of exhibits and
keeping court minutes. A copy of the title standard for Senior Court Clerk is annexed
as Exhibit "B."

4.    After completing law school and becoming admitted to the Bar in
February, 1984, plaintiff was appointed to the title of Law Assistant, Trial Part, in the
New York City Criminal Court on May 2, 1985. Two years later, on May 7, 1987,
she was appointed to the title of Senior Law Assistant, also in the New York City

Criminal Court. Both titles are legal positions and provide legal support to judges by researching and analyzing legal issues and drafting confidential legal opinions, decisions, orders, jury charges, and correspondence. Copies of the title standards for the Law Assistant and Senior Law Assistant titles are annexed, collectively, as Exhibit "C."

5.     On January 3, 1991, plaintiff was appointed as a Senior Court Attorney, Trial Part, in the New York City Criminal Court. From that date until October 1, 1998, she received alternating appointments to two positions in the Court Attorney title, specifically, Associate Court Attorney, Trial Part, and Principal Court Attorney, Trial Part. All three of these titles assist judges by researching and analyzing complex and difficult legal issues and questions and performing other related duties. Both Senior Court Attorneys and Principal Court Attorneys, however, are assigned to Acting Justices of the Supreme Court. Copies of the title standards for the Senior Court Attorney, Associate Court Attorney, and Principal Court Attorney titles are annexed, collectively, as Exhibit "D."

6.     On October 1, 1998, plaintiff was appointed to the title of Principal Law Clerk in Bronx County Supreme Court. Principal Law Clerks to Judge are assigned to individual judges who they assist by researching and analyzing uniquely intricate, complex and sensitive legal issues and questions. A copy of the title standard for this title is annexed as Exhibit "E." Plaintiff currently holds this position, which has a salary grade of JG-31.

The job selection process

7.     The selection process for positions in courts within New York City is a

four-fold process consisting of (1) the solicitation of applications for a position, (2) the

interview of qualified applicants, (3) the identification of the person most qualified for

the position and (4) the actual appointment of the chosen applicant. Except in certain

limited circumstances, not relevant to this case, job announcements are required for all

vacant positions in the noncompetitive or exempt class.[1] In order to give all eligible

persons an opportunity to apply for a position, job announcements are posted in court

facilities throughout the state. The job announcement identifies the position to be

filled, its duties, the minimum qualifications for appointment, and describes the

application procedure, including the last date for submitting an application.

8.     All applications submitted in response to a job announcement are

reviewed by an interview panel. Such interview panels are required for all

appointments to positions allocated to the salary grade JG-25 or above (with the

exception of Senior Court Reporters and personal appointees of judges), for all

appointments to unallocated (NS) positions which pay a salary equal to or in excess of

that paid at the hiring rate of JG-25, for all appointments to Chief Clerk and Deputy

---

[1] The noncompetitive class consist of all positions for which it is not practicable to ascertain the merit and fitness of applicants for those positions by competitive examination. 22 NYCRR § 25.9.    The exempt class consist of offices or positions, not in the noncompetitive or labor class, for the filling of which competitive or noncompetitive examinations are not practicable. 22 NYCRR § 25.8.

Chief Clerk positions, regardless of grade; and for all appointments to positions falling

within the Officials and Administrators occupational category. An interview panel

consists of at least four persons and typically includes persons who are well acquainted

with the position and the court facility where that position is assigned. The Deputy

Chief Administrative Judge, N.Y.C. Courts, the Deputy Chief Administrative Judge,

Justice Initiatives, the OCA Administrative Director, and the Administrative Judge for

the court where the position to be filled is located, are all authorized to designate at

least one of the panel members.

9.    Application forms do not contain any provisions permitting an applicant to

identify his or her sex, race, color, or national origin. After reviewing each application

in light of the duties and other requirements of the position, the interview panel

identifies those applicants most qualified for the position and invites some number of

them for a job interview.[2]

10.    After the panel has interviewed each of the applicants it has chosen, it

selects the three most qualified candidates for the position and from these three

candidates identifies the person who should be offered the position first. The panel

---

[2] From 2002 through Spring 2004, for certain high-level positions, such as New York City Chief Clerk, two rounds of interviews would be conducted with the initial round being conducted by the panel selected by the aforementioned Deputy Chief Administrative Judges, the First Deputy Chief Administrative Judge (or the OCA Administrative Director), and Administrative Judge, and a second and final round being conducted by a panel consisting of the aforementioned officials who selected the initial panel. The practice of conducting single panel interviews for these high level positions resumed in Spring 2004.

sends its recommendation, in order of preference, to the Deputy Chief Administrative Judge, N.Y.C. Courts, who then forwards the list and supporting documents with his or her recommendation to the OCA Administrative Director. When the recommendation is approved by the Administrative Director, the court with the position to be filled submits a Nomination for Appointment for the approved candidate.

The positions unsuccessfully sought by plaintiff

11.    Although plaintiff has applied for a number of jobs, she applied for only three within the period commencing 300 days before she filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission and ending at the time of that filing. Plaintiff's EEOC Charge was filed on July 19, 2004; 300 days prior to that date is September 23, 2003. Plaintiff's EEOC Charge is annexed hereto as Exhibit "P."

Chief Clerk VII, Supreme Court, Bronx County

12.    On March 3, 2004, the Unified Court System issued job announcement number 25405, a copy of which is annexed as Exhibit "F," to announce that applications were being accepted for the position of Chief Clerk VII in the Bronx County Supreme Court, Civil Term. Chief Clerks VII are the highest-ranking nonjudicial employees in the New York City Civil Court, the New York City Criminal Court, and the Family Court in the City of New York. They are also the highest-

ranking nonjudicial employees in the largest Supreme Courts in the State which are characterized by a combination of the following factors: (a) for each of two (2) consecutive years the court has multiple, full-time court parts; and (b) the court has more than 150 employees and a total combined civil and criminal filings of more than 25,000, or has more than 20,000 civil filings, or has more than 10,000 criminal filings.

13.    Chief Clerks VII  serve in a confidential capacity and are responsible for managing court operations related to case processing, budget and payroll preparation, personnel management and employee relations, deployment of nonjudicial personnel, coordination with non-court agencies, and for performing other related duties. A Chief Clerk VII is also responsible for the receipt, accounting, and disbursement of fines, fees, bail and other public or custodial funds. (A copy of the Title Standard for the Chief Clerk VII position is annexed as Exhibit "G.")

14.    To qualify for appointment to a Chief Clerk VII position, a candidate must have a Bachelor's degree from an accredited college and six (6) years of work experience involving managerial responsibilities such as human resource administration, budget preparation, and review of documents for compliance with policies, rules, and procedures, or the equivalent combination of education and experience. See Exhibits "F" and "J."

15.    In 2003, there were 36,605 new filings in the Civil Term of the Bronx County Supreme Court (i.e., cases in which a Request for Judicial Intervention ["RJI"] was made seeking some form of judicial relief, ex parte applications and uncontested

matrimonial cases). In 2003, the Bronx County Supreme Court, Civil Term, had 188
non-judicial employees under the supervision of the Chief Clerk.

16.    Job announcement number 25405 stated that all persons who were
interested in this position were to submit an application form and a resume to the
Honorable Gerald Esposito, the Administrative Judge for the Bronx Supreme Court,
Civil Term, no later than March 24, 2004.

17.    A total of 77 applications were received for this position, including an
application submitted by plaintiff on March 5, 2004. (A copy of plaintiff's application
is annexed as Exhibit "H"). All 77 applications – including plaintiff's application –
were submitted to the interview panel. The interview panel consisted of the following
persons: the Honorable Ann Pfau, First Deputy Chief Administrative Judge; the
Honorable Joan B. Carey, Deputy Chief Administrative Judge, N.Y.C. Courts; the
Honorable Juanita Bing-Newton, Deputy Chief Administrative Judge, Justice
Initiatives; and the Honorable Gerald V. Esposito, Administrative Judge, Bronx County
Supreme Court, Civil Branch. Judges Pfau and Carey are both persons with Irish
ancestry.

18.    From these 77 applications, 24 persons were selected by the interview
panel to be interviewed for the position. The names of the persons who were selected
to meet with the interview panel were:

| Grace A. Christie | Barry R. Clarke | Helen P. Corporan |
| Raymond J. Diaz | William F. Donahue | William C. Egan |
| Roger M. Fahey, Jr. | Michael Golden | Andrew K. Hassell |

| Esther E. Kelly | George F. King | Anthony M. Leach |
|---|---|---|
| Charles Lopez | Nelida Malave | Vincent F. Modica |
| Walter J. Nicholson | Tracy Pardo | Joseph J. Parisio, Jr. |
| Pablo G. Rivera | Ronald P. Romano | Roseann Siegel |
| Benjamin Steinberg | Steve Stone | Wilfred E. Trotman, Jr. |

19.    All of the persons invited to proceed to the interview phase submitted

applications that indicated that they met or exceeded the minimum qualifications for the

position. (Copies of the applications submitted by these 24 candidates are annexed,

collectively, as Exhibit "I"). Each candidate selected for interview had a number of

years of relevant managerial and supervisory experience in one or more of the relevant

areas specifically identified by the job announcement, such as human resource

administration (22 candidates), budget preparation (2 candidates), and court document

compliance review (12 candidates). Of the candidates selected for interview, 23 were

(like plaintiff) currently employed by the court system; 21 of them had anywhere from

seven to nineteen years of experience working in clerical titles above the level of senior

court clerk (the one clerical title that plaintiff had held nearly two decades before): 19

had been associate court clerks, 12 had been principal court clerks, six had been case

management coordinators, five had been court clerk specialists, four had been assistant

deputy chief clerks, six had been deputy chief clerks, and two had been first deputy

9

chief clerks.[3]  Unlike plaintiff, all of these candidates had progressed through a series of increasingly more demanding clerical titles and thus had gained experience directly relevant to performing the duties of Chief Clerk.

20.    Plaintiff was not selected to proceed to the interview phase of the application process.  Although she had earned both a Bachelor's and a Law degree, her application did not indicate that she had the requisite court managerial experience. None of the positions listed in plaintiff's resume – Uniformed or Senior Court Officer, Senior Court Clerk, or Court Attorney – typically perform any of the managerial duties required by the Chief Clerk VII position.  Nor did plaintiff provide any elaboration on her qualifications.  Her resume – which consisted of no more than a list of positions she had held – contained no description or narrative indicating that she had the sought-after managerial experience.  Nor did plaintiff's application reflect any significant supervisory experience.

21.    The applicant who was ultimately appointed to the Bronx County Supreme Court, Civil Term, Chief Clerk VII position was Tracy Pardo.  Pardo's presentation of her credentials and job experience demonstrated that she was clearly qualified for this

_____

[3]  With respect to the two other court system employees, one candidate had obtained a senior level security title with extensive supervisory responsibility; the other, in addition to possessing a master's degree in public administration, was employed in a senior budget office management position.  The only applicant selected from outside the court system was an attorney with extensive private and public supervisory experience.

10

position, the highest-ranking nonjudicial position in the Supreme Court, having as it does significant managerial and supervisory duties related to case processing, budget and payroll preparation, personnel management and employee relations, and deployment of nonjudicial personnel. Pardo, like plaintiff, began her career in the court system as a court officer and then became a senior court clerk. However, unlike plaintiff, she then ascended through a series of increasingly more responsible court managerial positions. In 1989, she became an associate court clerk; in 1990, a principal court clerk; and, in 1998, the Deputy Clerk of the Bronx Family Court, where she managed court operations and specialized units, and developed and supervised the first child protective/permanency planning unit in the state, as well as the domestic violence tracking system used in child protective proceedings.


### Chief Clerk VII, Kings County Supreme Court

22.    Also on March 3, 2004, the Unified Court System issued job announcement number 26403, a copy of which is annexed as Exhibit "J," to announce that applications were being accepted for the position of Chief Clerk VII at the Kings County Supreme Court. The general duties of, and the qualifications for, this position are the same as those set forth for the Bronx County Chief Clerk VII position set forth in paragraphs 11 - 13, above. (And see Exhibit "G," the Chief Clerk VII title standard).

11

23.    In 2003, there were 49,131 new filings in the Civil Term of the Kings County Supreme Court (i.e., cases in which a Request for Judicial Intervention ["RJI"] was made seeking some form of judicial relief, ex parte applications and uncontested matrimonial cases). In 2003, the Kings County Supreme Court, Civil Term, had 340 non-judicial employees under the supervision of the Chief Clerk.

24.    The job announcement stated that all persons interested in the Kings County Chief Clerk VII position were to submit an application form and a resume to the Honorable Neil Firetog, the Administrative Judge for the Kings Supreme Court, Civil Term, no later than March 24, 2004.

25.    A total of 72 applications were submitted for this position, including one by plaintiff. (A copy of plaintiff's application is annexed as Exhibit "H"). All 72 applications – including plaintiff's application – were submitted to the interview panel. The interview panel consisted of the following persons: the Honorable Ann Pfau, First Deputy Chief Administrative Judge; the Honorable Joan B. Carey, Deputy Chief Administrative Judge, N.Y.C. Courts; the Honorable Juanita Bing-Newton, Deputy Chief Administrative Judge, Justice Initiatives; and the Honorable Neil Firetog, Administrative Judge, Kings County Supreme Court, Civil Branch.

26.    From these 72 applications, ten persons were selected to be interviewed for the position. The names of the ten persons who were selected to meet with the interview panel were:

12

| | | |
|---|---|---|
| Grace Christie | Barry R. Clarke | John Costello |
| George Crowley | Paul J. Kenny | George F. King |
| Joseph J. Parisio, Jr. | Roderick E. Randall | Pablo Rivera |
| Edward J. Volpe | | |

27.     All of the persons invited to proceed to the interview phase of the

application process met or exceeded the minimum qualifications for the position.

(Copies of the applications submitted by these candidates are annexed, collectively, as

Exhibit "K"). Each candidate selected for interview had a number of years of relevant

managerial and supervisory experience in one or more of the relevant areas specifically

identified by the job announcement, primarily in human resource administration (9

candidates) and court document compliance review (7 candidates) .[4]  All ten of the

candidates selected were, like plaintiff, currently employed by the court system, and

nine of them had from six to twenty-three years of experience working in clerical titles

above the level of senior court clerk: seven had been associate court clerks, seven had

been principal court clerks, three had been case management coordinators, seven had

been court clerk specialists, two had been deputy chief clerks, and one had been a first

deputy chief clerk. Here, too, all but one of these candidates had progressed through a

series of increasingly more demanding clerical titles and all had gained experience

---

[4] Five of the ten candidates had also been selected for interview for the Bronx Chief
Clerk position: Grace Christie, Barry Clarke, George King, Joseph Parisio, and Pablo
Rivera.

directly relevant to performing the duties of Chief Clerk.[5]

28.    Plaintiff was not selected to proceed to the interview phase of the
application process.   Her resume failed to establish that she had even the minimum
qualifications for the position.  While she had earned both a Bachelor's and a Law
degree, here too her application failed to show that she had any of the managerial or
supervisory experience necessary for appointment as a Chief Clerk VII.

29.    The applicant who was ultimately appointed to the Kings County Supreme
Court Chief Clerk VII position was Edward Volpe.   Volpe was clearly qualified for
this position.  Volpe, like plaintiff, began his court system career as a court officer in
1978, and then worked as a senior court clerk for 12 years (plaintiff worked in that title
for less than two years), assigned first to the Criminal Term of Kings Supreme and
then, over an 11 year period, to the Civil Term, where he worked in every court part
and department, including the matrimonial and guardianship parts, and was the first
supervisor of the computer room. In 1996, he became a court clerk specialist in the
Civil Term, in charge of the motion and trial support offices, where he supervised 20
subordinate personnel.  Finally, in 2001, he became the First Deputy Chief Clerk of the
Civil Term, where he had managerial responsibility for all aspects of the Civil Term,

_____

[5]  The one candidate who had not served in a clerical series title, Paul Kenny, had
served (like plaintiff) as a court attorney; however, he had gone on from that position to,
inter alia, serve as the deputy chief court attorney in Kings Supreme, where he supervised
25 court attorneys and had administrative responsibilities in the court's law department.

14

including the management of over 40,000 cases and the implementation of the differential case management pilot project and the comprehensive civil justice program. Chief Clerk position.

### Court Clerk Specialist, New York County Supreme Court, Criminal Term

30. Although the Complaint does not allege a discriminatory failure to promote plaintiff to this position (which carries a lower salary grade than plaintiff's position as a Principal Law Clerk), it was sought by plaintiff within the applicable 300 day limitations period. See Complaint, ¶¶ 1, 12-15, 21 (alleging a discriminatory failure to promote only to the titles of Chief Clerk and Deputy Chief Clerk).

31. On March 10, 2004, the Unified Court System issued job announcement number 24402, a copy of which is annexed as Exhibit "L," to announce that applications were being accepted for the position of Court Clerk Specialist. Court Clerk Specialists work in the largest Supreme and Surrogate's Courts that are located in New York City, the Appellate Divisions, or in counties with populations exceeding 400,000, where they "supervise a staff of principal court clerks and other subordinate personnel who apply expert knowledge to complex problems in special terms [i.e., units or departments], the Appellate Divisions, or to particular functional areas of Surrogate's Court." (See the Court Clerk Specialist title standard, annexed as Exhibit "M"). Court Clerk Specialists are responsible, inter alia, for applying their "legal-technical expertise in a specialized area of the law to the review of the most unusual

15

and complex orders, motions and other court documents;" for "implement[ing]
changes in court procedures and court operations;" for "consult[ing] with judges and
court administrators and recommend[ing] new court procedures and guidelines;" and
for "devis[ing] and implement[ing] unit work procedures and guidelines." Id.
Among the knowledge, skills and abilities a Court Clerk Specialist must possess are an
"ability to train, supervise, and coordinate the activities of subordinate staff;" the
"ability to evaluate staff performance against job requirements;" and "knowledge of
personnel practices and procedures [and] budgeting practices and procedures." Id.
The Court Clerk Specialist title has a salary grade of JG-30, one below plaintiff's
grade.

   32. In order to qualify for appointment as a Court Clerk Specialist, an
applicant must have one year of service in a the Principal Court Clerk, Principal
Appellate Court Clerk or Principal Surrogate's Court Clerk title; or admission to the
New York State Bar and three years legal experience; or a combination of education
and experience directly related to the assignment.

   33. The job announcement for the Court Clerk Specialist position also noted
duties specific to the assignment in the New York County Supreme Court, Criminal
Term. The person being sought for this position was one who would be qualified to
"assist in managing court operations as 111 Centre Street [New York County Supreme
Court, Criminal Term] where there are 15 felony parts," and capable of assuming

16

responsibility for "monitoring the work performance of court clerks and subordinate personnel, ... reviewing paperwork maintained and submitted by court clerks, ... [and] conducting performance evaluations [and] monitoring attendance and punctuality of employees." See Exhibit "L." In addition, the job announcement directed applicants to submit a 250-350 word writing sample addressing the question: "What in your background, your experience or personality has prepared you to do the job of a Court clerk Specialist for the Criminal Term of Manhattan Supreme Court?" Id.

34.    A total of 46 applications were submitted for this position, including one from plaintiff that was received on March 16, 2004. (A copy of plaintiff's resume is annexed as Exhibit "N"). Plaintiff's application, however, did not contain a written statement as required by the job announcement. All 46 applications – including plaintiff's incomplete application – were submitted and reviewed by an ad hoc interview panel. The interview panel consisted of the following persons: Alan Murphy, Chief Clerk of the New York County Supreme Court, Criminal Term; Conrad Martin of the New York County Supreme Court, Criminal Term; Toni Cimino of the New York County Supreme Court, Criminal Term; Dianne Dixon of the Office of the Deputy Chief Administrative Judge, Justice Initiatives; John Giordano, Coordinator of Trial Court Operations; and Maria Logus of the Office of the Deputy Chief Administrative Judge, N.Y.C. Courts.

35.    From these 46 applications, 11 persons were selected by the interview

17

panel to be interviewed.   The names of the persons who were selected to meet with the
interview panel were:

| | | |
|---|---|---|
| George Cartegena | John Costello | Michael DiMaggio |
| William Hall | Andrew Hassell | Charles Lopez |
| Mary Price | Michael Stein | Frank Tufano |
| Ira Turkfeld | Priscilla Williamson | |

36.    All of the persons invited to proceed to the interview phase of the
application process met or exceeded the minimum qualifications for the position.
(Copies of the applications submitted by these candidates are annexed, collectively, as
Exhibit "O").  Five of the 11 candidates selected had the requisite minimum of one
year as a principal court clerk, a stated qualification on the job announcement (Exhibit
"L") – including two candidates who had also served as case management
coordinators, a clerical series title of a higher grade than principal court clerk – and
the remaining six candidates had work experience directly relevant to the Court Clerk
Specialist position.  For example, four of these six candidates served a minimum of
four years as associate court clerk, a position that is required for promotion to the
principal court clerk title.  Each of the associate court clerks invited to meet with the
interview panel had pertinent experience managing trial court operations, having
managed the operations of a particular term or office of the New York Supreme,
Criminal Term, and supervised subordinate staff therein.  Finally, the other two
candidates had a minimum of four years experience serving as an assistant deputy chief

18

clerk – a position having even greater management responsibilities than a principal court clerk and carrying significant supervisory responsibility. All of the candidates selected to proceed to the interview stage had submitted a written statement further explaining their qualifications for the position of Court Clerk Specialist.

37.    Plaintiff was not selected to proceed to the interview phase of the application process. While her resume established that she had met a minimum qualification of being admitted to the state bar and having had three years legal experience through her employment as a court attorney, she failed to demonstrate that she had experience with trial court operations – that is, experience clearly relevant to the position of Court Clerk Specialist – that was on par with the eleven persons who were invited to interview. Her resume, which again consisted of a list of positions that she had held, did not indicate that she had experience in the trial court operations area, nor any supervisory experience. Moreover, plaintiff did not submit a written statement that described what relevant experience (if any) she might have had.

38.    The applicant who was ultimately appointed to the Court Clerk Specialist position was William Hall. His presentation of his credentials and job experience demonstrated that he was clearly qualified – and significantly better-qualified than plaintiff – for this high-level clerical position. Hall, who has an M.B.A. from St. John's University, served five years as a principal court clerk in the New York County Supreme Court, Criminal Term, where he monitored the activities and performance of

19

court clerks, supervised subordinate employees, and reviewed documents for compliance with court rules and regulations.

## Plaintiff's EEOC Charge of Discrimination

39. Plaintiff, an attorney, filed a Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission ("EEOC") on July 19, 2004. See Exhibit "P."

40. On the cover sheet of the Charge, plaintiff checked off the boxes indicating that her discrimination claim had but two bases: age and national origin. The boxes for race, color, and sex were not checked. Plaintiff also attached a three-page, 25-paragraph statement of particulars ("the Particulars"). The particulars are preceded by a preamble stating that they are set forth by plaintiff "[i]n support of her complaint of National Origin discrimination under the Civil Rights Law Title VII."

41. In the first paragraph of the Particulars, plaintiff identified herself as "an Irish-American female." Nowhere in the Particulars did plaintiff state her age or date of birth.

42. In her Charge, plaintiff complained of her failure to be appointed to a number of positions over a number of years. She alleged that, since 1991, she "repeatedly" was denied consideration for promotional appointments to unspecified Chief and Deputy Chief Clerk positions [Particulars, ¶ 5]. She alleged that, in

20

December 2002, in seeking to be considered for "various" such positions, she met with Judge Carey to discuss the matter [Particulars, ¶ 8]. Plaintiff specifically alleged that, in March, 2004, she unsuccessfully sought promotions to three particular positions, one as Chief Clerk of the Bronx County Supreme Court, one as Chief Clerk of the Kings County Supreme Court, and one as "Deputy Chief Clerk" (in actuality, as pointed out in defendant's response to the EEOC Charge, the position was for a different title – Court Clerk Specialist) in the New York County Supreme Court [Particulars, ¶¶ 9 - 12]. Plaintiff also alleged that she was not appointed to an unspecified "five positions" after December, 2002 [Particulars, ¶ 13], which apparently included the three positions specified above for which she was not selected to be interviewed, plus one – for Deputy Chief Clerk of the New York City Criminal Court – for which she asserted she was granted an interview [Particulars, ¶ 13], and one other that is nowhere delineated.[6]

43.    In the Particulars to the Charge, plaintiff alleged that her failures to be promoted were the result of discrimination of only one kind: national origin.

_____

[6] The position for which plaintiff concedes she was interviewed was for Deputy Chief Clerk of the New York City Criminal Court, which was the subject of a job announcement dated December 11, 2002, and for which plaintiff was interviewed in March, 2003. As to the unspecified position, it should be noted that defendant was able, in its response to the EEOC Charge, to identify a fifth position which plaintiff unsuccessfully applied for, albeit in 1998, as a Court Clerk Specialist in Bronx County Supreme Court.

21

Specifically, with respect to the position of Chief Clerk of the Bronx County Supreme Court, she alleged that she was not interviewed for the position "although other applicants who were not Irish-American did receive letters of invitation to interview" [Particulars, ¶ 10], and that there "were several non-Irish-American candidates who were interviewed for the position who do not possess qualifications equal" to plaintiff's [Particulars, ¶ 18]. She further asserted that the woman who ultimately received the appointment to the Chief Clerk position was "a non-Irish-American whose qualifications are inferior" to plaintiff's [Particulars, ¶ 22].

44.     Plaintiff also alleged that, with respect to all the positions she sought, "several candidates who were granted interviews for the positions were less qualified than [plaintiff] and the list of interview candidates appears engineered to promote certain candidates who are not Irish-American [Particulars, ¶ 23]." Finally, plaintiff alleged that "[r]espondents' disparate treatment of [plaintiff] ... have [sic] been based, in all or part, on her national origin which is in violation of the Civil Rights Law Title VII" [Particulars, ¶ 25]."

45.     The Charge is devoid of allegations asserting that plaintiff was discriminated against on the basis of her race, color, or sex. Moreover, the Charge raises no claim of disparate impact, and does not allege that any person other than plaintiff has been discriminated against on the basis of national origin.

46.     Defendant submitted a detailed response to the Charge on February 22,

22

2005. By letter dated April 29, 2005, the EEOC dismissed the Charge.

## The complaint

47.    The complaint in this action was filed on July 26, 2005. (A copy of the
complaint is annexed as Exhibit "Q"). In it, plaintiff purports to raise claims not raised
in the EEOC Charge. Plaintiff alleges that "she was not selected for interview or
considered for Deputy Chief Clerk and/or Chief Clerk position(s) by defendant ...
because of her sex, national origin and race." Complaint, ¶ 1.

48.    In contrast to the EEOC Charge, which only ascribed her failure to be
promoted to national origin discrimination, the Complaint asserts that she was not
promoted "because of" one or some combination of three things: "her race, national
origin and/or gender." Complaint, ¶ 12.    Also in contrast to the EEOC Charge,
which only complained of the treatment afforded plaintiff herself, the Complaint asserts
that all of defendant's "Irish-American women employees and applicants" have been
discriminated against. Complaint, ¶ 11. The Complaint asserts that defendants have
"purposely limited" the rights of said (unnamed) persons who sought Deputy Chief
Clerk or Chief Clerk positions "with the intent and design to foster and protect the
advantage and advancement" of others, i.e., first Irish males (from 1991 to 199) and
then Hispanics and African-Americans of both sexes (from 1999 to present).
Complaint, ¶¶ 11 - 15. The Complaint asserts that plaintiff was qualified to be

23

appointed to such positions, but that less qualified Irish male and Hispanic and African-American individuals were appointed instead. Complaint, ¶ 16. The Complaint alleges that defendant's "disparate treatment of [plaintiff]" violated Title VII. Complaint, ¶ 21.

WHEREFORE, defendant's motion for summary judgment should be granted.

JOHN SULLIVAN

Sworn to before me this
7 day of August, 2006

Notary Public

JOANNE DEBRA ROONEY
Notary Public, State of New York
No. 01RO6034216
Qualified in Rensselaer County
Commission Expires December 6, 2009

STATE OF NEW YORK
COUNTY OF ALBANY

Kathleen Cunningham, being duly sworn deposes and says that deponent is over

the age of 18 years, is not a party to the action and resides at 206 Factory Hollow

Road, Valley Falls, New York 12185, and that on the 8th day of August, 2006,

deponent served one copy of the within Affidavit upon the following via Express Mail:

Steven M. Coren, Esq.
Coren & Associates, P.C.
570 Lexington Avenue
New York, New York 10022

at the address designated by him by depositing the same in a postpaid wrapper in an

official depository of the United States Postal Service in the State of New York.

Kathleen Cunningham

Sworn to before me this
8th day of August, 2006

NOTARY PUBLIC

JOANNE DEBRA ROONEY
Notary Public  State of New York
No. 01RO8034216
Qualified in Rensselaer County
Commission Expires  December 6, 2009