UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

FRANCES O'LEARY,

                                Plaintiff,

        -against-                                      05 Civ. 6722 (HB)

NY STATE UNIFIED COURT SYSTEM,

                                Defendant.

_____

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT


                                        MICHAEL COLODNER
                                        Attorney for Defendant
                                        Office of Court Administration
                                        25 Beaver Street, 11th Floor
                                        New York, New York 10004
                                        (212) 428-250


John J. Sullivan
  Of Counsel

TABLE OF CONTENTS

Page

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT I

    FAILURE TO PROMOTE CLAIMS ARISING
    MORE THAN 300 DAYS BEFORE THE
    EEOC CHARGE WAS FILED ARE TIME-BARRED . . . . . . . . . . . . . . . . . 4

POINT II

    BECAUSE PLAINTIFF HAS FAILED TO EXHAUST
    HER ADMINISTRATIVE REMEDIES WITH RESPECT
    TO CLAIMS ALLEGING DISCRIMINATION BASED
    ON SEX AND RACE, THOSE CLAIMS ARE BARRED . . . . . . . . . . . . . . 6

POINT III

    PLAINTIFF HAS FAILED TO ESTABLISH A PRIMA FACIE
    FAILURE TO PROMOTE CLAIM AND CANNOT,
    IN ANY EVENT, DEMONSTRATE THAT DEFENDANT'S
    LEGITIMATE REASONS FOR NOT PROMOTING HER
    WERE PRETEXTUAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    I. Standard for Title VII claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    II. Plaintiff fails to establish a prima facie case . . . . . . . . . . . . . . . . . . . . . . 14

        A. Plaintiff was not qualified for the positions she sought . . . . . . . . . 14

            1. The Chief Clerk positions . . . . . . . . . . . . . . . . . . . . . . . . 14

            2. The Court Clerk Specialist position . . . . . . . . . . . . . . . . . 16

i

B.  The failure to interview plaintiff or promote her
to these positions did not occur in circumstances
that could give rise to an inference of discrimination . . . . . . . . . .  18

III.   In any event, defendant had legitimate, non-discriminatory
reasons for not interviewing or hiring plaintiff for the positions,
and plaintiff cannot meet her burden of demonstrating that
those reasons were pretextual . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

A.  The Chief Clerk positions . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

B.  The Court Clerk Specialist position . . . . . . . . . . . . . . . . . . . . . .  21

CONCLUSION

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT SHOULD BE GRANTED
AND THE COMPLAINT SHOULD BE DISMISSED . . . . . . . . . . . . . . .  25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCES O'LEARY,

Plaintiff,

-against-                                                    05 Civ. 6722 (HB)

NY STATE UNIFIED COURT SYSTEM,

Defendant.

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

### Preliminary Statement

Plaintiff Frances O'Leary ("Plaintiff") is a Principal Law Clerk to a Judge in the Bronx

County Supreme Court who alleges that she was discriminated against in violation of Title VII

of the Civil Rights Act of 1964 by her employer, defendant New York State Unified Court

System, when defendant failed to promote her to various high-level positions she sought. She

alleges that she was not promoted to, or selected to be interviewed for, several Chief Clerk

and Deputy Chief Clerk positions because of her gender, her national origin (Irish-American),

and her race.

Defendant moves for summary judgment pursuant to FRCP 56 on the ground that there

is no genuine issue as to any material fact and it is therefore entitled, as a matter of law, to

1

summary judgment in its favor. Defendant is entitled to judgment as a matter of law on any

claims arising from failures to promote that occurred more than 300 days before plaintiff filed

her EEOC discrimination charge, because those claims are untimely. Defendant is also

entitled to judgment as matter of law on any claims alleging sex and race discrimination,

because plaintiff did not exhaust her administrative remedies with respect to those claims.

Finally, defendant is entitled to judgment as a matter of law on any timely claims alleging

national origin discrimination because (a) plaintiff has failed to establish two elements of a

prima facie case of unlawful discrimination, specifically, that she was qualified for the

positions she sought, and, that her failure to be selected occurred under circumstances that

could give rise to an inference of discrimination; and (b) in any event, defendant can

demonstrate legitimate, non-discriminatory reasons for not promoting plaintiff – i.e., that

qualified candidates with superior credentials were selected instead of plaintiff– and plaintiff

cannot demonstrate that those reasons are false and merely a pretext for discrimination.

### Facts

The relevant facts of this case are fully set forth in the defendant's Statement pursuant

to Civil Rule 56.1 ("56.1 Stmt.") accompanying this motion, and the Affidavit of John J.

Sullivan, sworn to August 7, 2006 ("Sullivan Aff."), and the Court is respectfully referred

thereto.

In brief, plaintiff is an Irish-American female who has worked in the defendant state

court system since 1978. Complaint, ¶¶ 9-10. From 1985 to the present, plaintiff has been

employed in a series of legal positions with the court system, advancing through a number of

court attorney positions that provide legal support to judges, culminating in her appointment as

2

a Principal Law Clerk to a Judge in 1998. Sullivan Aff., ¶¶ 4-6, Exhibits "C"–"E."

This action arises out of plaintiff's unsuccessful attempts to jump from being an individual judge's law clerk to being made the Chief Clerk (or a Deputy Chief Clerk) of one of the Supreme Courts in New York City. Complaint, ¶ 1. Plaintiff alleges that she is qualified for such positions, and that lesser-qualified persons of different gender, race, and national origin than her have instead been appointed to those jobs. Complaint, ¶ 16.

Plaintiff challenged these failures to be promoted in a Equal Employment Opportunity Commission ("EEOC") discrimination claim filed on July 19, 2004. Complaint, ¶ 25. There were only three job openings that plaintiff applied for within the three hundred day period preceding her EEOC filing: Chief Clerk of the Civil Term of the Bronx County Supreme Court, Chief Clerk of the Civil Term of the Kings County Supreme Court, and a position not referred to in the complaint, Court Clerk Specialist in the New York County Supreme Court. Sullivan Aff. ¶ 11.

Although the complaint asserts race, gender, and national origin discrimination (Complaint, ¶ 12), the EEOC charge raised only national origin and age (a ground not raised here) as grounds for the discrimination she allegedly suffered. Sullivan Aff., Exhibit "P."

Chief Clerks are the highest-ranking non-judicial employees in the Bronx and Kings Supreme Courts; in 2003, there were 188 non-judicial employees under the supervision of the Chief Clerk in the Bronx, and 340 non-judicial employees under the supervision of the Chief Clerk in Kings. Sullivan Aff., ¶¶ 15, 23. Chief Clerks are the top managers of their courts, responsible for all court operations from case processing, to budget and payroll preparation, to personnel management and employee relations, to deployment of nonjudicial personnel, to

3

coordination with non-court agencies, and to the receipt, accounting, and disbursement of

fines, fees, bail and other public or custodial funds. Sullivan Aff., ¶ 13, Exhibit "G."

The persons who were selected to be interviewed, and those who were appointed,

presented credentials indicating significant court managerial and supervisory experience.

Sullivan Aff., Exhibits "I" and "K." Plaintiff, on the other hand, submitted a resume which

did not indicate that she had any requisite court managerial and supervisory experience.

Sullivan Aff., Exhibit "H." Plaintiff was not selected to be interviewed nor considered

further for appointment to those posts. This litigation followed.

## POINT I

### FAILURE TO PROMOTE CLAIMS ARISING
### MORE THAN 300 DAYS BEFORE THE
### EEOC CHARGE WAS FILED ARE TIME-BARRED

Each allegation regarding the denial of a promotion is an allegation that refers to a

discrete act of alleged discrimination. As the Supreme Court made clear in National R.R.

Passenger Corp. v. Morgan, 536 U.S. 101 (2002):

> discrete discriminatory acts are not actionable if time barred, even when they
> are related to acts alleged in timely filed charges. Each discrete discriminatory
> act starts a new clock for filing charges alleging that act. The [EEOC] charge,
> therefore, must be filed within the ... [,in New York,] 300-day time period after
> the discrete discriminatory act occurred.

Id. at 113-114 (holding that a failure to promote is an "easy to identify," discrete act that to be

actionable must be the subject of a timely filed charge). This time bar cannot be overcome by

alleging that failures to promote that occurred more than 300 days before the filing of an

EEOC charge are part of a pattern or practice, or constitute a continuing violation. Id. at 111-

4

114.

In New York, the limitations period for filing discrimination charges with the EEOC is 300 days. Butts v. New York Dep't of Housing, 990 F.2d 1397, 1401 (2d Cir. 1993). Plaintiff filed her EEOC Charge on July 19, 2004. Complaint, ¶ 25. Accordingly, only failures to promote that occurred within the period 300 days prior to July 19, 2004 are actionable; any allegedly discriminatory failures to promote prior to the 300 day period were not the subject of a timely EEOC filing and are thus not cognizable in this action.

300 days prior to July 19, 2004 is September 23, 2003. Thus, any alleged failures to promote prior to September 23, 2003 are not actionable. The Complaint fails to specifically allege the dates that plaintiff was allegedly denied promotions to "various positions of Deputy Chief Clerk and Chief Clerk" (see Complaint, ¶ 12).[1]

Only three denied promotions occurred during the applicable limitations period. Two of those three were for Chief Clerk positions, in Bronx County Supreme Court and Kings County Supreme Court, respectively; job announcements for both openings were posted on March 4, 2004. Sullivan Aff., Exhibits "F" and "J." The third "promotion," however, concerned a title that plaintiff does not mention in her complaint, i.e., a position as a Court

---

[1] In her EEOC Charge, however, plaintiff referred to five positions to which she did not get promoted. See Sullivan Aff., Exhibit "P." One, not specified, appears to be a position as a Court Clerk Specialist in Bronx County Supreme Court that she sought in 1998. Sullivan Aff., ¶ 42. That allegation would clearly be time-barred. A second denied promotion referred to in the EEOC Charge was to a position as Deputy Chief Clerk of the New York City Criminal Court, which was posted in December, 2002, and for which plaintiff was interviewed in March 2003. Sullivan Aff., ¶ 42. An allegation concerning this failure to promote is also clearly time-barred.

5

Clerk Specialist in New York County Supreme, Criminal Term.[2] Sullivan Aff., Exhibit "Q" (the Complaint). Plaintiff's failure to allege in the Complaint that she was denied a promotion to this position is doubtless explained by the fact that it is a position that has a lower salary grade (JG-30) than the one she had at the time she sought the position (i.e., a JG-31).

In any event, plaintiff has not asserted a claim based on her failure to be appointed as a Court Clerk Specialist; the Complaint in this action restricts itself to allegations regarding promotions to the Chief Clerk and Deputy Chief Clerk titles. See Complaint, ¶ 1 ("Plaintiff ... alleges that she was not selected for interview or considered for Deputy Chief Clerk and/or Chief Clerk position(s)); ¶¶ 12, 13 - 16.

Accordingly, the only two timely failure to promote claims in this action are those concerning plaintiff's failure to be appointed to the positions of Chief Clerk of the Bronx County and Kings County Supreme Courts. Any other claims must be dismissed as time-barred.

## POINT II

### BECAUSE PLAINTIFF HAS FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES WITH RESPECT TO CLAIMS ALLEGING DISCRIMINATION BASED ON SEX AND RACE, THOSE CLAIMS ARE BARRED

As a precondition to filing a Title VII suit in federal court, a plaintiff must first exhaust her available administrative remedies by filing a timely complaint with the EEOC or other administrative agency. See Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003); Briones v.

---

[2] The job announcement for this position was posted March 10, 2004. Sullivan Aff,, Exhibit "L."

6

Runyon, 101 F.3d 287, 289 (2d Cir. 1996); Butts v. City of New York Dep't of Housing, 990
F.2d 1397, 1401 (2d Cir. 1993). Only claims of discrimination explicitly raised before an
administrative agency are properly before the court, unless the claims not previously raised are
reasonably related to those preserved by filing with the administrative agency. Butts, 990
F.2d at 1401.

Here, plaintiff's EEOC Charge raised claims of national origin and age – plaintiff did
not allege discrimination based on sex or race in her EEOC Charge. Sullivan Aff., Exhibit
"P." Accordingly, plaintiff is barred from raising claims of discrimination based on sex and
race in this action, unless she can demonstrate that those claims are reasonably related to her
national origin claim. She cannot.

In Butts, the Second Circuit outlined three situations where a claim not alleged in the
EEOC charge might be reasonably related to one that was; the only one relevant here is the
type of claim that concerns conduct which could be said to fall "within the scope of
investigation which can reasonably be expected to grow out of the" EEOC charge of
discrimination. See Butts, 990 F.2d at 1402-03.[3] This type of "reasonably related" claim "is
essentially an allowance of loose pleading" made in recognition that EEOC charges
"frequently are filled out by employees without the benefit of counsel." Id. at 1402. That
rationale cannot be applied here, however, because plaintiff was represented by counsel in
filing the EEOC charge, and is herself an attorney. See Holtz v. Rockefeller & Co., Inc., 258

---

[3] The other two situations set forth in Butts involve (1) an allegation of retaliation for
filing the EEOC complaint and (2) an allegation of further incidents carried out in the same
manner as the incidents alleged in the EEOC charge, but occurring after the investigation. 990
F.2d at 1402-03.

F.3d 62, 82, n.4 (2d Cir. 2001) ("[P]ro se attorneys such as [plaintiff] typically 'cannot claim the special consideration which the courts customarily grant to pro se parties.' Harbulak v. County of Suffolk, 654 F.2d 194, 198 (2d Cir. 1981).").

Even if plaintiff were entitled to a presumption in favor of loose pleading, she still cannot demonstrate that her claim of discrimination against her as an Irish-American reasonably relates to a claim of sex or race discrimination. In assessing whether claims are reasonably related, the primary focus is "on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." Keravin, 335 F.3d at 201 (internal quotations omitted). Here, it is self-evident from the language used in the charge that nothing in it would have alerted the EEOC to investigate discrimination based on sex or race. In her charge, plaintiff's allegations regarding the candidates who were chosen over her to interview for promotional positions are all couched solely in terms of national origin. For example, with respect to the Bronx County Chief Clerk position, plaintiff complained only that she "was not considered for an interview although *other applicants who are not Irish-American* did receive letters of invitation to interview" (EEOC Charge, ¶ 10) and that there "were *several non-Irish-American candidates* who were interviewed ... who do not possess qualifications'" equal to plaintiff's (EEOC Charge, ¶ 18) (emphasis added). She further complained that the position was ultimately given to a female identified solely as "a *non-Irish-American* whose qualifications are inferior" to plaintiff's (EEOC Charge, ¶ 22) (emphasis added). With respect to her allegations about all the positions she sought but did not receive, she complained that "the list of interview candidates appears engineered to promote certain *candidates who are not Irish-American*" (EEOC Charge, ¶ 23) (emphasis

8

added).

Thus, the Charge clearly restricts itself to a claim that less qualified non-Irish-Americans were treated more favorably than a particular Irish-American, plaintiff. It focuses on no other aspect of plaintiff's identity or the identity of persons to whom she compares her treatment, all of whom are only referred to as "non-Irish-Americans." There would certainly be no reason to extend an investigation of plaintiff's charge to discrimination based on sex, particularly since the only successful candidate for promotion she specifically identifies is Tracy Pardo, a female. Nor could the charge's language reasonably suggest a grievance involving race discrimination against plaintiff, since the focus on discrimination against a single white ethnic group clearly suggests that other whites are alleged to have received favorable treatment.

Indeed, the Charge specifically affirms that plaintiff was complaining only about national origin discrimination: in the preamble to the statement of particulars appended to the form charge, plaintiff states that she is providing the particulars "[i]n support of her complaint of National Origin discrimination under the Civil Rights Law Title VII." Sullivan Aff., Exhibit "P."[4] There are simply no factual allegations in the EEOC Charge that would have provided sufficient notice to the agency to investigate discrimination based on race or sex.

"Courts in the Second Circuit have generally held that claims alleging discrimination based upon a protected classification which are different than the protected classification

---

[4] On the form charge, plaintiff checked the box for national origin discrimination and age discrimination (although the particulars make no reference to plaintiff's or anyone else's age, and she does not raise that claim in this action); the boxes for race and sex are not checked. Sullivan Aff., Exhibit "P."

9

asserted in administrative filings are not reasonably related." Gronowicz v. College of Staten Island, 359 F.Supp.2d 243, 248 (N.D.N.Y. 2005). In the factual circumstances of this case, plaintiff is unable to demonstrate that the sex and race claims she seeks to assert for the first time in federal court are reasonably related to the national origin claim that she raised before the EEOC. Accord Delly v. H.I.R.E. Inc., 2004 WL 2297821 (E.D.N.Y.) (race discrimination claim not reasonably related to national origin claim raised before EEOC, where EEOC complaint contains no factual allegations suggesting need to investigate race discrimination and focuses solely and specifically on national origin, with no mention of race); Woodcock v. Montefiore Medical Center, 48 F.Supp.2d 231 (E.D.N.Y. 1999) (claim of race discrimination "wholly different" than claim of national origin discrimination raised in the administrative charge, which did not mention race); Levesanos v. White, 2002 WL 1202472 (S.D.N.Y.) (no basis for entertaining race claim in federal court where EEOC charge only alleged discrimination based on plaintiff's Greek national origin); Ige v. Command Sec. Corp., 2002 WL 720944 *5-6 (E.D.N.Y.) ( no reasonable relationship between national origin claim made in administrative charge and complaint seeking to assert race and color claim, where administrative charge does not even mention race); Coleman v. Board of Educ., City of New York, 2002 WL 63555, *5 (S.D.N.Y.), aff'd 45 Fed. Appx. 79 (2d Cir. 2002) ( claim of gender discrimination not reasonably related to claim of national origin discrimination); James v. Newsweek, 1999 WL 796173, *6-8 (S.D.N.Y.), aff'd 213 F.3d 626 (2d Cir. 2000) (gender discrimination claim not reasonably related where no reference made to it in EEOC charge alleging claims race, ethnicity and age); Blanke v. Rochester Telephone Corp., 36 F.Supp.2d 589, 594-95 (W.D.N.Y. 1999) ( would stretch concept of allowing for loose pleading too far

10

to allow gender discrimination claim to stand where EEOC charge made but one reference to gender, which could not reasonably have been expected to lead to an EEOC investigation of sex discrimination).

Here, plaintiff's newfound claims that her failures to be promoted constitute sex and race discrimination were not specifically raised in her EEOC charge, and are not reasonably related to the national origin discrimination claim that she did raise in the charge.   The EEOC charge did not make any references whatsoever to the racial identity of plaintiff or, more importantly, to that of the persons who allegedly received preferential treatment in the promotional process: those persons were referred to solely as "non-Irish-Americans." Sullivan Aff., Exhibit "P." Plaintiff, an attorney, was represented by counsel at the time of filing the EEOC charge, and is thus not entitled to any allowance that might be given for a loosely-pled pro se EEOC charge. Nor is this a situation that might permit a broader reading of the EEOC charge based on the use of terms suggestive of both race and national origin (e.g., "Asian Indian") or terms historically likely to betray confusion between the two categories (e.g., the term "Hispanic"). See Deravin, 335 F.3d 195, 201-02; Tamayo v. City of New York, 2004 WL 725836, *6 (S.D.N.Y.). Accordingly, plaintiff's unexhausted race and sex discrimination claims should be dismissed.

## POINT III

### PLAINTIFF HAS FAILED TO ESTABLISH A PRIMA FACIE FAILURE TO PROMOTE CLAIM AND, IN ANY EVENT, CANNOT DEMONSTRATE THAT DEFENDANT'S LEGITIMATE REASONS FOR NOT PROMOTING HER WERE PRETEXTUAL

Plaintiff cannot establish a prima facie case of national origin (or any) discrimination because she cannot show that she was qualified for the positions she sought, or that she failed

11

to obtain them under circumstances suggesting discrimination. Even if she could make a threshold showing of discrimination, defendant had legitimate, nondiscriminatory reasons for not promoting or interviewing her – i.e., that she was less qualified than the successful candidates – and plaintiff cannot demonstrate that these reasons were merely pretextual.

I.    Standard for Title VII claims

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to fail to hire or promote an individual because of that individual's national origin. See 42 U.S.C. 2000e-2(a)(1); Espinoza v. Farah Manufacturing Company, 414 U.S. 86, 88 (1973).[5] In order to establish a violation of Title VII, the complainant must first establish a prima facie case of national origin discrimination by showing that she is (a) a member of the protected class, (b) that she applied for a position for which she was qualified, (c) that she was rejected for the position under circumstances suggesting an inference of discrimination, and (d) that the employer left the position open and continued to seek applicants. Brown v. Coach Stores, Inc., 163 F.3d 706, 709 (2d Cir. 1998).

Where the complainant has made out a prima facie case, the defendant may rebut that showing by articulating a legitimate, nondiscriminatory reason for the decision not to hire or promote the claimant. Brown, 163 F.3d at 710. Once the employer makes the requisite showing, the complainant must prove that the reason proffered by the employer is a pretext for discrimination, Brown, 163 F.3d at 710; specifically, that the proffered reason was false and

---

[5]   National origin discrimination is defined by the EEOC as "the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1.

12

that the real reason for the employer's decision was discrimination based on national origin. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993). Where an employer proffers the nondiscriminatory reason that complainant was not hired or promoted because she was a less qualified candidate, the mere existence of differences in the credentials of the complainant and of the other competing applicants does not constitute evidence of pretext, unless those differences are so favorable to the complainant that there can be no dispute that the claimant was clearly better qualified for the position at issue. Byrnie v. Town of Cromwell, 243 F.3d 93, 103 (2d Cir. 2001) (noting that a reviewing court or agency "must respect an employer's unfettered decision to choose among qualified candidates") (quoting Fischbach v. D.C. Dept. of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996)). See also Millbrook v. IBP, Inc., 280 F.3d 1169, 1181 (7th Cir. 2002) ("No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, Title VII does not interfere."); Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Services, 165 F.3d 1321, 1330 (10th Cir. 1999) ("Our role is to prevent unlawful hiring practice, not to act as a 'super personnel department' that second guesses employers' business judgments.")[6]

---

[6] Although the same analysis defeating plaintiff's Title VII claims would apply to plaintiff's claims under the New York State Human Rights Law and the New York City Human Rights Law, those latter claims are barred by the Eleventh Amendment and must be dismissed. The Eleventh Amendment bars suits against the State of New York in federal court, regardless of the relief sought, unless the state has consented to be sued or Congress has legislatively overridden the state's Eleventh Amendment immunity. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100-01 (1984). Agencies of the state may assert the state's Eleventh Amendment immunity where, for all practical purposes, the agency is the alter ego of the state and the state is the real party in interest. Edelman v. Jordan, 415 U.S. 651 (1974); Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459 (1945). Defendant Office of Court

13

## II.    Plaintiff fails to establish a prima facie case

Plaintiff cannot make out two of the four necessary elements of a prima facie case: that she was qualified for the positions that she sought, and that her failure to be interviewed or promoted occurred in circumstances that could give rise to an inference of discrimination.

### A.    Plaintiff was not qualified for the positions she sought

#### 1.    The Chief Clerk positions

The Chief Clerk positions that plaintiff sought in the Supreme Courts of Bronx and Kings Counties would have made her the highest-ranking nonjudicial employee in courts that are among the largest Supreme Courts in the State. Sullivan Aff., ¶¶ 12, 15, 23. Persons in those positions "serve in a confidential capacity and are responsible for managing court operations related to case processing, budget and payroll preparation, personnel management and employee relations, deployment of nonjudicial personnel, and coordination with non-court agencies, and for performing other related duties." Chief Clerk VII Title Standard, annexed to Sullivan Aff. as Exhibit "G." A Chief Clerk VII is "also responsible for the receipt, accounting, and disbursement of fines, fees, bail and other public or custodial funds." Id. A Chief Clerk's typical duties include "supervis[ing] a large staff of clerical and professional

---

Administration is a state agency. See Harley v. Perkinson, 187 A.D.2d 765, 589 N.Y.S.2d 655 (3rd Dept. 1992); McKinney v. State, 111 Misc.2d 382, 387, 444 N.Y.S.2d 386, 390 (N.Y. Ct. Cl. 1981); Volin v. N.Y. State Court Administration, 1992 WL 123174, *2 (S.D.N.Y). New York has not consented to suit under state or local law in federal court. Cassells v. University Hospital at Stony Brook, 740 F.Supp. 143, 147-48 (E.D.N.Y. 1990); Sutherland v. NYS Dep't of Law, 1999 WL 314186 *10 (S.D.N.Y.). In any event, the Court should also decline pendent jurisdiction over such claims pursuant to United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

14

court personnel," and "supervis[ing] preparation of budget requests." Id. Among the knowledge, skills and abilities a Chief Clerk must possess are a "knowledge of personnel, budgeting, and other administrative practices," the "ability to identify relevant facts and analyze complex issues and data related to court management and allocation of resources," and the "ability to train, supervise, and coordinate the activities of subordinate staff." Id.

As set forth in the job announcements advertising the two Chief Clerk positions, to qualify for appointment to these positions, an applicant was required to have a "bachelor's degree from an accredited college and six (6) years of work experience involving managerial responsibilities such as human resource administration, budget preparation, and review of documents for compliance with policies, rules, and procedures, or an equivalent combination of education and experience." See Sullivan Aff., Exhibits "F" and "J."

A simple comparison of the above-stated qualifications with the resume plaintiff submitted (Sullivan Aff., Exhibit "H") easily demonstrates that plaintiff could not reasonably be considered a qualified candidate for the Chief Clerk positions. Plaintiff's resume failed to demonstrate that she had gained experience or performed a managerial role in any of the stated areas of expertise. Although she exceeded the stated educational level, plaintiff lacked any court managerial experience. None of the positions listed on her resume – Uniformed and Senior Court Officer, Senior Court Clerk, or Court Attorney -- typically perform any of the managerial duties relevant to the Chief Clerk position, nor do they provide any relevant supervisory experience. And plaintiff's resume failed to include any description or narrative indicating that she had developed the requisite court management experience and skills.

Although the Chief Clerk positions sought by plaintiff required a person to manage, at

15

the highest level, the entire spectrum of court operations for courts that had the previous year handled 36,605 (Bronx) and 49,1312 (Kings) new case filings – including all aspects of case processing, budget and payroll preparation, personnel and employee relations, coordination with non-court agencies, and all fiscal receipts, accounting and disbursements – plaintiff lacked <u>any</u> prior court system managerial experience or demonstrated expertise in <u>any</u> of these crucial management areas. Sullivan Aff., ¶¶ 15, 23.

Although these Chief Clerk positions also required a person to supervise, at the highest level, the deployment and efficient performance of 188 (Bronx) or 340 (Kings) non-judicial employees (none of whom worked in the legal titles in which plaintiff had spent the previous 19 years), plaintiff lacked <u>any</u> significant prior court system supervisory experience. Sullivan Aff., ¶¶ 15, 23. Simply put, plaintiff's resume did not demonstrate that plaintiff had developed even minimal expertise in managing any single relevant area of court operations, nor that she had ever exercised any supervisory responsibility over any significant number or unit of employees. In the absence of satisfying these fundamental experiential criteria, plaintiff clearly was not qualified to be interviewed for, much less appointed to, the highest-ranking non-judicial positions in the Supreme Court.

### 2. The Court Clerk Specialist position

As argued above, the third position that plaintiff sought unsuccessfully within the applicable limitations period – as a Court Clerk Specialist in New York County Supreme Court, Criminal Term, in March, 2004 – was not a title about which the complaint in this action alleges a discriminatory failure to promote. See Complaint, ¶¶ 1, 12-15, 21 (alleging a discriminatory failure to promote only to the titles of Chief Clerk and Deputy Chief Clerk).

16

Even if it were, however, plaintiff would also be unable to establish that she was qualified for appointment to this position either.

The duties, responsibilities, and qualifications for the Court Clerk Specialist title are set forth at paragraphs 31 to 33 of the Sullivan Affidavit and the exhibits referred to therein. Id

Here, again, plaintiff's application did not demonstrate that she was sufficiently qualified to merit an interview for the position, much less be appointed to it. First, plaintiff had never worked in any of the principal court clerk titles specified in the announcement, nor even in any associate court clerk title, the next lowest title in the clerical title series. Second, plaintiff's resume (Sullivan Aff., Exhibit "N") did not indicate that she had any experience with respect to managing any aspect of trial court operations, or training, supervising and coordinating the work of a group of subordinate personnel – tasks not only relevant but fundamental to the Court Clerk Specialist position. Indeed, the combination of a lack of sufficient supervisory experience with a lack of prior operational experience in any of the relevant lesser titles which she would be called upon to supervise rendered plaintiff distinctly underqualified for consideration.[7]

_____

[7] In addition to submitting an application and resume, applicants were directed to submit a 250-350 word writing sample addressing the question: "What in your background, your experience or personality has prepared you to do the job of a Court clerk Specialist for the Criminal Term of Manhattan Supreme Court?" Id. The interview panel did not receive a writing sample from plaintiff, and thus had no evidence that she might possess some relevant experience or abilities that might warrant further consideration.

17

B. The failure to interview plaintiff or promote her to these positions did not
occur in circumstances that could give rise to an inference of discrimination.

Nothing in the record here could give rise to an inference that plaintiff's non-selection

for these positions was based in any way on discrimination against her as an Irish-American.

Plaintiff has not alleged that any other Irish-American applicant was discriminated

against, nor has she alleged that any of the decisionmakers involved in the selection process

ever made any discriminatory remarks toward Irish-Americans. Moreover, two persons on the

four-member interview panel for the Chief Clerk positions are themselves white women with

Irish ancestry (i.e., Judges Carey and Pfau), and these same persons appointed representatives

to the six-member interview panel for the Court Clerk Specialist position.

III.   In any event, defendant had legitimate, non-discriminatory reasons for not interviewing
or hiring plaintiff for the positions, and plaintiff cannot meet her burden of
demonstrating that those reasons were pretextual.

Even if plaintiff could be said to have demonstrated a prima facie failure to promote

claim, defendant had legitimate, non-discriminatory reasons for not selecting plaintiff to be

interviewed or promoted. For each position at issue, plaintiff lacked the competitive

qualifications necessary for selection, while the persons who were interviewed and appointed

did in fact possess qualifications superior to plaintiff's.

As noted above, plaintiff's resume indicated that she was under-qualified for the high-

ranking court management positions she sought. She sought appointment to managerial and

supervisory positions that required a set of relevant skills and experiences that her career in the

court system had not equipped her with. Never having had any significant experience or

responsibility for managing court operations or supervising units of employees, plaintiff was

18

simply not qualified for positions that required – and attracted a number of candidates that possessed – demonstrated expertise in these areas. Plaintiff's resume indicated that she had spent a substantial portion of her career in the court system – including the previous 19 years – working as a court attorney or as a law clerk to a judge, positions that did not involve a significant degree of supervision of subordinate personnel or court management-related duties, duties directly relevant to the titles sought. See Sullivan Aff., Exhibits "C" - "E" (title standards for jobs in the legal series held by plaintiff). Plaintiff's work history did not reflect any demonstrable expertise in any one area of court operations, let alone the wider spectrum of such knowledge and experience necessary to be considered a qualified candidate for the highest-ranking non-judicial positions in the Supreme Court.[8]

As a comparison of the resumes demonstrates, plaintiff's level of experience was not competitive with that of any of the persons selected for interview, all of whom possessed qualifications superior to plaintiff's.

A. The Chief Clerk positions

Twenty four persons were selected to be interviewed for the Bronx Chief Clerk position. All of them met or exceeded the minimum qualifications for the position. (See Sullivan Aff..Exhibit "I" [interviewee applications]). Each candidate had a number of years of relevant managerial and supervisory experience in one or more of the areas specifically identified by the job announcement. Sullivan Aff., ¶¶ 18, 19. Unlike plaintiff, all of these

---

[8] Much earlier in her career, plaintiff had also worked in the court security area but, again, those positions did not entail significant managerial or supervisory responsibilities. The only item on plaintiff's resume remotely relevant to the positions at issue was a brief stint in a much lower-level clerical position (senior court clerk) nearly two decades before.

19

candidates had progressed through a series of increasingly more demanding clerical titles and had gained experience directly relevant to performing the duties of Chief Clerk. (See, e.g., the resumes of Grace Christie, Barry Clarke, Helen Corporan, and William Donahue, annexed to the Sullivan Affidavit at Exhibit "I"). Indeed, as a review of the resumes makes clear, all of the candidates selected for interview possessed relevant qualifications far beyond those of plaintiff's. Sullivan Aff., Exhibit "I."

Tracy Pardo, who was ultimately appointed to the Bronx Chief Clerk position had credentials and job experience demonstrating that she was clearly qualified for this position. Sullivan Aff., ¶ 21. Pardo's superior qualifications for the position were a legitimate, non-discriminatory for promoting her rather than plaintiff to the Bronx Chief Clerk position.

Ten persons were selected to be interviewed for the Kings County Chief Clerk position, all of whom met or exceeded the minimum qualifications for the position.[9] (See Sullivan Aff., Exhibit "K [interviewee applications]). Again, each candidate selected had a number of years of relevant managerial and supervisory experience in one or more of the relevant areas specifically identified by the job announcement. Sullivan Aff., ¶¶ 26, 27. Here, too, all but one of these candidates had progressed through a series of increasingly more demanding clerical titles and all had gained experience directly relevant to performing the

---

[9] This position was posted at the same time the Bronx County Chief Clerk position was posted, and three of the four interview panel members served on both panels. Five of the ten candidates selected to be interviewed had also been selected for interview for the Bronx Chief Clerk position: Grace Christie, Barry Clarke, George King, Joseph Parisio, and Pablo Rivera.

20

duties of Chief Clerk.[10]  (See, e.g., the resumes of John Costello and George King, annexed to the Sullivan Affidavit at Exhibit "K"). Here, too, as a review of the resumes makes clear, all of the candidates selected for interview possessed relevant qualifications far beyond those of plaintiff's. Sullivan Aff., Exhibit "K."

Edward Volpe, who was ultimately appointed to the Kings County Chief Clerk position, was clearly well-qualified. Sullivan Aff., ¶ 29.  Volpe's superior qualifications for the position were a legitimate, non-discriminatory for promoting him rather than plaintiff to the Kings Chief Clerk position.

## B.  The Court Clerk Specialist position[11]

Eleven persons who met or exceeded the minimum qualifications for the position, were selected to be interviewed by a six-member interview panel. (Sullivan Aff., Exhibit "O" [interviewee applications]). All the selected candidates had credentials and work experience making them well-qualified for consideration for the Court Clerk Specialist position. Sullivan Aff., ¶¶35, 36.[12]

---

[10]  The one candidate who had not served in a clerical series title, Paul Kenny, had served (like plaintiff) as a court attorney; however, he had gone on from that position to, inter alia, serve as the deputy chief court attorney in Kings Supreme, where he supervised 25 court attorneys and had administrative responsibilities in the court's law department.

[11]  Although plaintiff sought this position within the applicable limitations period, her Complaint does not allege that her failure to receive it was discriminatory.  Even if she had stated an allegation about this position, however, defendant had a legitimate, non-discriminatory reason for not promoting her to it: the person who was selected clearly was better qualified.

[12]  Plaintiff's application failed to demonstrate that she had any relevant experience with trial court operations that was on par with the persons who were invited to interview.

21

William Hall, who was ultimately appointed to the Court Clerk Specialist position, was clearly qualified – and significantly better-qualified than plaintiff – for this high-level clerical position. Sullivan Aff., ¶ 38. Hall's superior qualifications for the position were a legitimate, non-discriminatory for promoting him rather than plaintiff to the Court Clerk Specialist position.

In sum, plaintiff was not selected for interview or promotion to any of the positions she sought for a legitimate reason: she clearly was less qualified than those who were selected for interview and those who ultimately were promoted. And plaintiff cannot meet her burden of demonstrating that her lack of comparable qualifications was merely a pretextual reason for her non-selection.

Plaintiff attempts to assert that she met or exceeded the qualifications of the successful candidates. See Complaint, ¶¶ 16, 18. A comparison of the submitted resumes makes clear that there is no factual basis for this assertion. More importantly, in order to sustain a qualifications-based demonstration of pretext, plaintiff would have to show that her credentials were actually so superior to the credentials of the candidates selected that no reasonable person could have chosen those candidates over plaintiff. See Byrnie, 243 F.3d at 103. Given her lack of comparable court managerial and supervisory experience – qualifications fundamental

---

Her resume, which again consisted of a list of positions that she had held, did not indicate that she had experience in this area, or any significant supervisory experience; indeed, it showed that she had not worked in a clerical series title in nearly 20 years. Moreover, unlike the candidates selected to be interviewed, plaintiff did not submit the requested written statement describing whatever background, experience, or personality traits she had that prepared her to perform the job.

22

to the jobs in question – she simply cannot do so, and, as a matter of law, her discrimination claim must therefore fail. See Johnson v. Connecticut Dept. of Corrections, 392 F.Supp.2d 326, 337-38 (D.Conn. 2005).

Nor would there be any merit to the notion that plaintiff's long career as a court attorney renders her better-qualified than the persons appointed. It is the employer's evaluation of a candidate's qualifications that must govern, not the candidate's. An employer's "decisions regarding the professional experience and characteristics sought in a candidate, as well as the search committee's evaluations of plaintiff's qualifications, are entitled to deference" by the Court. Sarmiento v. Queens College CUNY, 386 F.Supp.2d 93, 97-98 (E.D.N.Y.), aff'd 153 Fed.Appx. 21 (2d Cir. 2005) (citing cases). The Court's role "is not to evaluate the wisdom of personnel decisions, but merely to determine whether the decisions were rational and non-discriminatory." Id. at 98, citing Tarshis v. Riese Org., 211 F.3d 30, 37 (2d Cir. 2000). Whether an individual is qualified for a job can only be assessed according to the criteria that the employer has specified for the position, not criteria that may seem reasonable to the litigant or to the Court. Sarmiento, 386 F.Supp.2d at 97-98. And in the absence of discrimination, it is not the province of the Court to sit as a super-personnel department to second-guess an employer's business judgment, even if it is poor or erroneous. See Williams v. NYC Dept. of Sanitation, 2001 WL 1154627, * 18 (S.D.N.Y.); Faldetta v. Lockheed Martin Corp., 2000 WL 1682759, * 9-10 (S.D.N.Y.); Gilman v. Runyon, 865 F.Supp. 188, 193 (S.D.N.Y. 1994).[13] Plaintiff's subjective views of her own qualifications

---

[13]  Moreover, the Court's inquiry must be confined to the information available to the employer at the time of the decision. See Anderson v. Delphi Automotive Systems Corp., 297

23

can do nothing to rebut the proferred reason as pretextual, or raise a material issue of fact in

that regard. See Butt v. Bd. of Trustees of Eastern Illinois Univ., 83 F.Supp.2d 962, 970

(C.D. Ill. 1999) (citing cases). And even if the panels' evaluations of her qualifications were

erroneous, that still would not constitute evidence of pretext. Id. (citing cases).[14]

Here, plaintiff's lack of competitive qualifications was a legitimate, nondiscriminatory

reason for not hiring – or interviewing – her for the positions she sought. Indeed, the

existence of more qualified candidates is the quintessential legitimate reason for not promoting

or interviewing plaintiff or any other less qualified applicant. As the applications demonstrate,

there were applicants who had credentials and job experiences that were far more directly

relevant to each of those positions than the credentials and experience presented by plaintiff.

---

F.Supp.2d 625, 628 (W.D.N.Y.), aff'd 111 Fed.Appx. 634 (2d Cir. 2004); Taylor v.
Polygram Records, 1999 WL 124456, *10 (S.D.N.Y.). It is of no avail for plaintiff to
amplify her qualifications during this litigation, when all that she presented of her credentials
to the interview committee was a resume listing previous titles, without any narrative
describing how her experience in those titles might have been relevant to the positions she
sought.

[14] Even if, arguendo, plaintiff could maintain a claim based solely on her failure to be
given an interview, it would fare no better than her failure to promote claims. Even if
plaintiff's qualifications could arguably be called equal to those of the interviewed candidates,
Title VII does not require that all qualified applicants for a job be called in for an interview.
Bray v. Georgetown Univ., 917 F.Supp. 55, 60 (D.D.C. 1996), aff'd 116 F.3d 941 (D.C.
Cir. 1997) (Under Title VII, the "mere fact that plaintiff possessed some or even all of the
qualifications contained in the vacancy announcement does not automatically entitle him to an
interview."). "Evaluation of credentials is a subjective and discretionary task. ... [A] court
may not review the propriety of [an employer's] decision not to interview [p]laintiff for the
position;" unless the employer's decision was so egregiously mistaken that it had no basis in
fact, the court's only task is to consider whether plaintiff can demonstrate that "the reasons for
that decision were pretextual because the search committee did not honestly believe them."
Butt, 83 F.Supp.2d at 970-71 (finding, on defendant's motion for summary judgment, that the
other candidates' resumes establish a factual basis for the interview committee's decision not
to interview plaintiff).

24

Specifically, plaintiff, whose primary credential was her unrelated job experience as a court

attorney for 19 years, sought appointment to managerial and supervisory positions for which

defendant reasonably expected candidates to possess a significant degree of high-level clerical

experience. Plaintiff did not; the successful candidates did. Plaintiff cannot demonstrate that

the legitimate reasons proffered by defendant are false, nor that there is any evidence to

support a reasonable inference that those reasons are merely a pretext for unlawful natural

origin discrimination. Accordingly, summary judgment should be granted in favor of

defendant on all of plaintiff's claims.

## CONCLUSION

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED AND THE COMPLAINT SHOULD BE DISMISSED.

Dated: New York, New York
      August 8, 2006

MICHAEL COLODNER
Attorney for Defendants
Office of Court Administration
25 Beaver Street, 11th Floor
New York, New York 10004
(212) 428-2150

By:

John J. Sullivan (JJS 9947)
Assistant Deputy Counsel

John J. Sullivan
Of Counsel

25

STATE OF NEW YORK
COUNTY OF ALBANY

Kathleen Cunningham, being duly sworn deposes and says that deponent is over

the age of 18 years, is not a party to the action and resides at 206 Factory Hollow

Road, Valley Falls, New York 12185, and that on the 8th day of August, 2006,

deponent served one copy of the within Memorandum of Law upon the following via

Express Mail:

Steven M. Coren, Esq.
Coren & Associates, P.C.
570 Lexington Avenue
New York, New York 10022

at the address designated by him by depositing the same in a postpaid wrapper in an

official depository of the United States Postal Service in the State of New York.

Kathleen Cunningham

Sworn to before me this
8th day of August, 2006

NOTARY PUBLIC

JOANNE DEBRA ROONEY
Notary Public, State of New York
No. 01RO6034216
Qualified in Rensselaer County
Commission Expires December 8, 2009