<u>POINT I</u>

**UNDER THE CONTINUING
VIOLATION EXCEPTION
TO TITLE VII'S 300 DAY
FILING WITH THE EEOC RULE
PLAINTIFF'S CLAIMS ARE
NOT TIME-BARRED**

<u>The First EEOC Charge</u>

Defendant argues that any promotions sought 300 days prior to Plaintiff's first EEOC filing are time-barred. Defendant erroneously relies on *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). In Morgan the Court held that a refusal <u>to</u> <u>hire</u> is a discrete act and thus subject to the 300 day time limit. This is not a refusal to hire case. This is a case involving an twenty five (25) year employee who sought eight (8) promotions in (8) years. This is a case of a policy and practice of discrimination and falls within the continuing violation exception to the 300 day time limitation for filing an EEOC Charge.

Under the continuing violation exception to Title VII's 300 day filing limitations period, if a Plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely, even if they would be untimely standing alone. Civil Rights Act of 1964, § 706(d), as amended, 42 U.S.C.A. § 2000e-5(e). If a plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone. *Cook v. Pan Am Worl Airways, Inc.*, 771 F.2d 635, 646(2d Cir. 1985) *cert*. *denied*, 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986). This is the case at bar. Plaintiff first filed her

EEOC complaint on July 19, 2004. The language of the Charge clearly indicated that Plaintiff was complaining of a "policy of discrimination" and a "continuing violation":

   a.   Since 1991 Complainant has <u>repeatedly</u> sought to be considered for a position as a Chief Clerk or Deputy Clerk in the New York city Courts, however Respondents have <u>repeatedly</u> refused to consider her application. (emphasis added). Exhibit 1 to Defendant's Rule 56.1 Statement, Par. 5;

   b.   Complainant met with Respondent Carey to discuss the Complainant's <u>repeated</u> exclusion from the application process. (emphasis added). Exhibit 1 to Defendant's Rule 56.1 Statement, Par. 8.; and

   c.   As a result of the foregoing, Respondents have administered their <u>procedures</u>, <u>policies</u> and <u>practices</u> in terms of job assignment and transfers in a manner that has limited the opportunities of Complainant…(emphasis added) Exhibit 1 to Defendant's Rule 56.1 Statement, Par. 8.

Under the three (3) year statute of limitations for Title VII, Plaintiff sought four (4) positions, Court Clerk V, Chief Clerk County Supreme Court, Chief Clerk Kings County Supreme Court and Court Clerk Specialist, New York County Supreme Court, Criminal Term. Because Plaintiff's first EEOC Charge clearly put both the EEOC and Defendant on notice that this was a pattern and practice of discrimination, it falls within the continuing violation theory, and all causes of action for all four (4) promotions are timely.

<u>The Second EEOC Charge</u>

On August 30, 2006, Plaintiff filed her Second Charge of Discrimination. Again, said Charge alleged a pattern and practice of discrimination, therefore invoking the "continuing violation exception". The Charge alleged the following:

   a.   Since 1991 Respondent has engaged in a <u>course of conduct</u>…..Complainant, who has <u>repeatedly</u> sought to be considered…..Respondent has <u>repeatedly</u> refused to consider. (Emphasis added) Exhibit 3 to Defendant's Rule 56.1 Statement, par. 4;

    b.    The <u>traditional</u> and <u>current</u> <u>hiring</u> <u>practice</u> of Respondent discriminates against Caucasian females; Exhibit 3 to Defendant's Rule 56.1 Statement, par.

    c.    In furtherance of Respondent's <u>discriminatory</u> <u>practices</u> or <u>procedures</u>….(Emphasis added) Exhibit 3 to Defendant's Rule 56.1 Statement, par. 36;

    d.    Respondent's <u>continuing</u> and <u>repeated</u> <u>promotion</u> or advancement <u>practices</u> to the detriment of Caucasian females…(Emphasis added) Exhibit 3 to Defendant's Rule 56.1 Statement; and

    e.    The aforesaid <u>procedures</u>, <u>policies</u> and <u>practices</u> constitute <u>continuing</u> and <u>repeated</u> violations of Title VII. The incidents of discrimination alleged that occurred prior to three hundred (300) days from the date hereof relate to discriminatory conducts of Respondent which occurred since October 2005. (Emphasis added) Exhibit 3 to Defendant's Rule 56.1 Statement.

Defendant cannot, in good faith, argue that the second EEOC Charge does not put both the EEOC and Defendant on notice that this is a case of a discriminatory practice and policy as applied to the Plaintiff. Clearly the continuing violation theory applies and therefore, all promotions sought within Title VII's three year statute of limitation are actionable, including the March 2005 Court Clerk Specialist (Fiduciary) in the Bronx.

## POINT II

**DEFENANT'S ASSERTION THAT ALL CLAIMS THAT WERE THE SUBJECT OF PLAINTIFF'S FIRST EEOC CHARGE ARE BARRED BY A FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES IS SUBSTANITLLY MOOT**

As discussed <u>supra</u>, Plaintiff's second EEOC Charge, alleging race and gender discrimination, filed in August 2006 alleges a policy and practice of discrimination and falls within the "continuing violation" exception to the 300 day rule. Therefore, all claims of race and gender discrimination are only subject to Title VII three (3) year statute of limitation. Hence, all failure to promote claims from August 30, 2003 forward

are viable claims. Therefore the only claim arguably in dispute would be the claim that Plaintiff was denied the Deputy Clerk V position in 2002. We maintain that that claim is still viable for two reasons.

First, the original EEOC Charge put Defendant on notice of her claim of gender and race discrimination. The Charge referenced Plaintiff's May 28, 2004 written complaint with the Inspector General's Office for Bias Matters. Exhibit 1 to Defendant's Rule 56.1 Statement, par. 19. That complaint specifically identifies both race and gender as a basis for Plaintiff's complaints of discrimination. This is enough to put both the EEOC and Defendant on notice of a race and gender claim.

Second, for equitable reasons, this Court should not allow Defendant this defense. The original complaint filed on July 26, 2005, clearly asserts claims of both race and gender discrimination:

   a.   …with the intent and design to foster and protect the advantage and advancement of Irish males, and generally Hispanic and African-American employees and applicant to the detriment of said Irish-American women; Exhibit 2 to Defendant's Rule 56.1 Statement, par. 11;

   b.   OCA has repeatedly refused to consider her for or promote her to such positions because of her race, national origin and/or gender. Exhibit 2 to Defendant's Rule 56.1 Statement, par. 12;

   c.   OCA has maintained a practice of preferring Hispanic and/or African American individuals…. Exhibit 2 to Defendant's Rule 56.1 Statement, par. 15; and

   d.   OCA's repeated consideration and selection of Irish Male, Hispanic and African American individuals… Exhibit 2 to Defendant's Rule 56.1 Statement, par. 16;

On ___ Defendant served an answer to this Complaint and did not assert the defense that Plaintiff did not exhaust her administrative remedies in relation to her gender

and race claims. In fact, Defendant litigated these issues for a year. The proper remedy for Defendant's contention would have been a 12(b)(6) motion to dismiss claims of race and gender discrimination. Had Defendant made such a motion, Plaintiff would have had time to file a new Charge of Discrimination, therefore curing the issue as to many of the promotions. However, Plaintiff was lulled in to a belief that Defendant was defending, on the merits, her race and gender claims. This Court should not now, after almost two (2) years of investigating and litigating issues of race and gender discrimination, allow Defendant to "ambush" Plaintiff by claiming Defendant was not on notice of her claims of race and gender discrimination.

### POINT III

### PLAINTIFF HAS ESTABLISHED ALL FOUR (4) ELEMENTS OF A PRIMA FACIE CASE OF GENDER AND RACE DISCRIMINATION

It is settled law that to establish a prima facie case of discrimination for failure to promote on the basis of Title VII claims for race and gender discrimination, a plaintiff must show that (1) the plaintiff is a member of a protected class; (ii) the plaintiff applied and was qualified for the jobs; (ii) the application was rejected; and (iv) the employer hired from outside the protected class. *Reeves v. Sanderson Plumbing Products, Inc*. 120 S.Ct. 2097 (2000). This is a de minimus burden. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 at 506 (1998). Defendant contends that Plaintiff cannot meet all of the requirements. Defendant is incorrect.

It is well settled law that Caucasian is a class that is protected by Title VII. CITE As a Caucasian female she is clearly a member of a protected class.. Aff. Of Plaintiff at Second, Plaintiff is qualified for the jobs that she applied for. __.

Further, Plaintiff can meet the remaining three (3) requirements as to each position.

A.    Chief Clerk VII of the Bronx Supreme Court, Civil Term

The requirements for this position were a Bachelor's degree from an accredited college and six (6) years of work experience involving managerial responsibilities or the equivalent combination of education and experience such as human resources administration, budget preparation, and review of documents for compliance with policies, rules and procedures. Defendant's Rule 56.1 Statement, Pars. 8. Plaintiff applied for this position. Plaintiff has a BA a JD and had six years of managerial responsibilities including _____. Plaintiff applied for the position, met the job requirement and was thereby qualified for the position and the position ultimately went to a Hispanic Female, Tracy Pardo.

B.    Chief Clerk VII, Kings County Supreme Court

The requirements for Chief Clerk VII were the same as for the Chief Clerk VII position as stated above. And as stated above, Plaintiff applied for and met the qualifications. The position ultimately went to a Caucasian male, Edward Volpe. Defendant's Rule 56.1 Statement at 46.

C.    Court Clerk Specialist, New York County Supreme Court, Criminal Term

The requirements for a Court Clerk Specialist are one year of service in the Prinicpal Court Clerk, Principal Appellate Court Clerk or Principal Surrogate's Court

Clerk Title; or admission to the New York State Bar and three years legal experience; or a combination of education and experience directly related to the assignment. Defendant's Rule 56.1 Statement at Par. 24.  Plaintiff met the requirements:  At the time of application for this position, Plaintiff was a JD, had two (2) years experience as a Senior Court Clerk in Surrogates and Civil Court, had worked in various capacities in Criminal Court for over six (6) years and had legal experience of nineteen (19) years. Exhibit 14 to Defendant's Rule 56.1 Statement.  Plaintiff submitted her application for this position and was qualified for same.  Defendant's Rule 56.1 Statement, Par. 26.  The position ultimately went to a Black male, William Hall.

D.  <u>Court Clerk Specialist (Fiduciary) Bronx County Supreme Court</u>

Plaintiff applied for this position, and, was in fact granted an interview.  Further, Defendant admits that Plaintiff was qualified for the position.  Defendant's Rule 56.1 Statement, Par. 35 and Exhibit 19 thereto.  The position ultimately went to a Caucasian male., Philip Conran. Defendant's Rule 56.1 Statement at 34.

E.  <u>Chief Clerk VI of the Bronx County Surrogate's Court</u>

The requirements for Chief Clerk VI were a Bachelor's degree from an accredited college or university and four years of work experience involving managerial responsibilities such a human resourced administration, budge preparation, and review of documents for compliance with policies, rules and procedures, or equivalent combination of education and experience.  Exhibit 21 to Defendant's Rule 56.1 Statement. And as stated above, Plaintiff applied for the position.  Defendant's Rule 56.1 Statement at 39. As stated above under the Chief  Clerk VII section, Plaintiff met the qualifications.  The

person ultimately went to a Hispanic female, Diana Cruz. Defendant's Rule 56.1 Statement at 45.

F.	Court Clerk Specialist in the Bronx County Surrogate's Court

Plaintiff applied for this position, and, was in fact granted an interview. Further, Defendant admits that Plaintiff was qualified for the position. Defendant's Rule 56.1 Statement, Par. 48, 52 and Exhibit 31 thereto. The position ultimately went to a Black male, Wilson Kenney.

G.	Court Clerk Specialist (Matrimonial) in the Bronx County Supreme Court

Plaintiff applied for this position, and, was in fact granted an interview. Further, Defendant admits that Plaintiff was qualified for the position. Defendant's Rule 56.1 Statement, Par. 54, 58 and Exhibit 37 thereto. The position ultimately went to a Black female, Esther Kelly.

H.	Court Clerk V

Plaintiff applied for this position in 2002. Plaintiff applied for this position, and, was in fact granted an interview. The position ultimately went to an Hispanic female, Serena Springle.

As stated above, each of the positions the Plaintiff applied for, was qualified for and, each time, it was given to a non-Caucasian female. Therefore, Plaintiff has made out her *prima facia* case.

**POINT IV**

**DEFENDANT'S PROFFERED
REASONS FOR FAILING TO PROMOTE
PLAINTIFF EIGHT (8) TIMES
IN EIGHT (8) YEARS CAN ONLY
BE VIEWED AS PRETEXTUAL**

There is sufficient evidence in the record that Defendant's stated reason, that the canididate ultimately hired for each sought position was more qualified than Plaintiff, is false and pretextual.  Such a showing by Plaintiff, that Defendant's stated reasons are false and pretextual, may be sufficient for the trier of fact to infer that the Defendant's real reason was discriminatory – even without the Plaintiff's offering of any affirmative evidence of discrimination. See *Reeves v. Sanderson Plumbing*, 120 S.Ct. 2097 (2000).  Further, to demonstrate pretext, Plaintiff may rely on the same evidence she used to support her prima facie case.  *Kerzer v. Kingly Mfg.*, 156 F.3d 396 (2nd Cir. 1998).  Thus, many of the arguments given in Point I regarding the Plaintiff's qualifications for each position sought also serve to refute Defendant's allegations that she was not "qualified".

Plaintiff can show Defendant's stated reasons are false.

<u>The Plaintiff Has Supervisory Experience</u>

First, Defendant relies on the argument that Plaintiff was denied positions because she lacked "any significant experience or responsibility for …supervising units of employees".  This is simply not true, Plaintiff possessed the following supervisor experience:

1. Senior Court Clerk: Plaintiff supervised Aids.  EBT pg 21, 15-18;
2. Court Attorney: supervised the Judge's Confidential Secretaries. Pg 68 lines 9-16;
3. Court Attorney to J. Price: supervised six to seven student interns.  Pg. 77 2-9; and
4. Court Attorney to J. Price: and J. Ruiz she supervised six to seven student interns. Pg. 77, lines 2-9.

Defendant's articulated reason for denying her promotions, that she lacked supervisory experience, is false and can be seen as pretextual.

Plaintiff has knowledge of Court Operations

Second, Defendant claims that Plaintiff was denied positions because her "work history did not reflect any demonstrable one area of court operations, let alone the wider spectrum of knowledge and experience necessary to be considered a more qualified candidate for high-level non-judicial positions". This strange statement seems to criticize Plaintiff for having not having enough experienced in a specialized field of law and, at the same time, having too much specific experience. Defendant can't have it both ways. Assuming Defendant is stating that Plaintiff did not have enough specialized experience, this statement is false. She has over thirteen (13) years experience within the criminal court system. Said experience would have made her ideal for the two positions sought w/in the criminal courts: Deputy Chief Clerk 5 Criminal Court and Court Clerk Specialist Criminal Term.

Further, in that Plaintiff has worked in the system for over twenty nine (29) years, she also has significant experience in other departments: Thirteen (13) years in Supreme Court, two (2) years in Surrogate's Court. Further, Plaintiff has continued to attend seminars and conferences in specialized areas of law: Plaintiff has, for the past six (6) years attended the R.C. Diocese of Brooklyn, Annual Lawyers' Conference, at which Surrogate Holzman lectures. The subjects of these conferences is trusts and estates. In or about 2003, Plaintiff became certified as a court examiner under the guardianship rules (Rule 36).

The Positions Are Given to The Most "Qualified" Individuals

Defendant next relies on the position that the candidates hired for the positions sought by Plaintiff were the most qualified, based upon the individual job description and

requirements, in work experience and education. See Defendant's MOL, p. 16. However, as demonstrated below, this is false. Many candidates placed in the positions, did not, in fact, have the experience necessary for the position.

    a.    <u>Serena Springle</u>: Deputy Chief Clerk 5. Ms. Springle only possessed a highschool deploma, although the job requirements include a Bachlors degree.

    b.    <u>Tracy Pardo</u>: Chief Clerk VII, Supreme Court. Ms. Pardo, unlike the Plaintiff, did not have a JD. Further, prior to this appointment, Ms. Pardo had virtually no experience in Supreme Court. Her only time working in Supeme Court was as a Uniformed Court Officer from 1983 to 1985. Defendant's Rule 56.1 Statement, Exhibit 9.

    c.    <u>Diana Cruz</u>: Court Clerk Specialist, Bronx County Surrogate Court. At the time of appointment, Ms. Cruz only had a high school diploma. It is startling that she was even granted an interview, never mind given the position in that one of the requirements for a Court Clerk Specialist is a Bachelor's degree from an accredited college or university and four (4) years of work experience involving managerial responsibilities. Defendant's Rule 56.1 Statement at 38.

Further, by Defendant's own statement, a Specialist's responsibility is: "to apply their 'legal-technical expertise in a specialized area of the law to the review of the most unusual and complex orders, motions and other court documents.'" Clearly, a jury could find that Plaintiff, an attorney that had, in fact, been doing the very same function for judges as a court attorney for twenty years, w/d be more capable in this position than an individual without a law degree or, at a minimum, a college degree.

    d.    <u>Esther Kelly</u>: Court Clerk Specialist.  Like Ms. Cruz, Ms. Kelly, at the time of appointment only had a high school deploma.  Again, a jury could find that Plaintiff was better suited for the Specialist position.

    Enough of the candidates that were given positions clearly did not meet the job requirements even for an interview.  We maintain that this is enough to show that Defendant's reason, that the candidates given the positions, were more qualified than Plaintiff, are false and therefore pretextual.

<u>Defendant does promote from the Court Attorney Series to the Court Clerk Series</u>

    Defendant asserts throughout its MOL that Plaintiff was not qualified for the Clerk VII positions because she had not worked her way up through the court clerk series, but, instead, had worked in attorney titles.  In sum and substance, Defendant argues that the positions are "apples and oranges".  The court attorneys, by there job responsibilities, do not have the supervisory or managerial experience necessary to move into a high ranking Court Clerk postion.  This assertion is false.

    In fact, the Chief Administrative Judge of New York States Courts, Jonathan Lippman, according to his own biography, went form the Court Attorney to Chief Clerk and Executive Officer without ever having working in a clerk title.  Further, the current Chief Clerk VI in Surrogates Court, Nassau County, similarly, went from court attorney to Chief Clerk postion without ever having working in the clerk series.  It is obvious from the tremendous careers of these individuals that there is no hard rule precluding a court attorney from moving into the clerk series.

    Finally, in support of Plaintiff's contention that she has been the victim of a pattern and practice of discrimination, it should not be ignored that Plaintiff, in eight (8)

years, applied for eight (8) positions.  She was only granted three (3) interview.  Each of the positions was given to a non-Caucasian female or a male.

In sum, Because Plaintiff has made out her prima facia case of discrimination and has shown that Defendant's articulated reasons for denial are false and therefore pretextual, Defendant's motion for summary judgment must be denied.