UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
FRANCIS O'LEARY,                                :
                                                :
                        **Plaintiff,**    :
                                                :      05 Civ. 6722 (HB)
       - against -                            :
                                                :      <u>OPINION & ORDER</u>
NY STATE UNIFIED COURT SYSTEM                   :
                                                :
                        **Defendant.**   :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge*:**

On July 26, 2005, Frances O'Leary ("O'Leary" or "Plaintiff") filed a complaint against her employer, the New York State Unified Court System ("OCA" or "Defendant") that alleged sex, national origin, and race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et seq.*, New York State Human Rights Laws, N.Y. Exec. L. §290, *et seq.* ("State HRL"), and New York City Human Rights Law, N.Y.C. Admin. C. §8-101, *et seq.* ("City HRL") ("Compl."). On November 15, 2006, Plaintiff amended her complaint ("Am. Compl."), and alleged she was not selected for an interview or considered for Chief Clerk position(s) by OCA based on her sex, national origin, and age. On November 29, 2006, counsel for both parties met with the Court and agreed that all national origin and age discrimination claims would be dropped, and that the only remaining claims are those for race and sex discrimination. The charge, in essence, by the Plaintiff is that OCA hired non-Caucasian females, as well as Caucasian and non-Caucasian males, while discriminating against Caucasian women like her. OCA now moves this Court for summary judgment with respect to the remaining claims.[1] For the reasons stated below, the motion is GRANTED in its entirety.

### I.    FACTUAL BACKGROUND

**A.    O'Leary's Employment with the New York State Unified Court System**

From 1978 to July 2005 (inception of this action), O'Leary, an Irish-American female (Compl. ¶ 9), worked for OCA and held various positions in both New York and Bronx

---

* Ashley Antler, a summer 2007 intern in my Chambers and currently a second-year law student at the Benjamin N. Cardozo School of Law, provided assistance in researching and drafting this Opinion.

[1] Neither party requested oral argument on this motion; therefore, I decide this motion on the basis of the complaint, moving papers, supporting affidavits and exhibits.

1

Counties. From 1978-1983, O'Leary was a Uniformed Court Officer in New York and Bronx Counties. Am. Compl. ¶ 10. From September 1983 through February 1985, O'Leary was employed as Senior Court Clerk in Bronx County Surrogate's Court, and on February 7, 1985, O'Leary was appointed as Senior Court Clerk in New York City Civil Court. Id. From 1985 through 2005, O'Leary was employed as a Senior, Associate, and Court Attorney for various justices in the New York County and Bronx County Supreme Courts.[2]

**B.      The Unified Court System's Employment Application and Appointment Process**

The selection process for positions in New York City courts spans four separate stages – (1) solicitation of applications for a position, (2) interview of qualified applicants for the position, (3) identification of the person most qualified for the position, and (4) the actual appointment of the selected applicant to the position. Affidavit of John Sullivan, Apr. 9, 2007 ("Sullivan Aff.") ¶ 17. Job announcements, which identify the position to be filled, its duties, the minimum qualifications for appointment and describe the application procedures, are posted in court facilities throughout New York State to afford eligible persons the opportunity to apply. Id. All applications submitted in response to a job announcement are reviewed by an interview panel consisting of at least four persons who typically are well-acquainted with the advertised position. Id. ¶ 18. OCA application forms omit any provisions for an applicant to identify his or her race, sex, color, or national origin. Sullivan Aff. ¶ 19. After reviewing each application in light of the duties of the position, the interview panel identifies those applicants deemed to be the most qualified for the position and invites a number of them for a job interview. Id. After the panel completes its interviews, it selects the three "most qualified candidates for the position," and from these three identifies the top applicant to whom it would like to extend an offer of employment, then the panel sends its recommendation to the Deputy Chief Administrative Judge of the New York City courts, who then forwards the list and supporting documents with his or her recommendation to the OCA Administrative Director. Id. at ¶ 20.

---

[2] From May 2, 1985 to May 7, 1987, O'Leary was employed as a Law Assistant in New York City Criminal Court. From May 7, 1987 through January 3, 1991, O'Leary was employed as a Senior Law Assistant in New York City Criminal Court. Def.'s 56.1 Statement ¶ 3. From January 1991 through October 1998 O'Leary was employed as Senior Court Attorney in New York City Criminal Court and was also appointed to two other positions: Associate Court Attorney and Principal Court Attorney. Def.'s 56.1 Statement ¶ 3. From October 1988 to December 2005, O'Leary was employed as Principal Law Clerk in the Bronx County Supreme Court. Def.'s 56.1 Statement ¶ 3.

**C.     O'Leary's Applications for Positions with OCA**

O'Leary applied for eight positions with OCA in eight years,[3] and each of the positions was given to a non-Caucasian woman, or a man. Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") 12-13. Plaintiff contends she was only granted three interviews. Id.

(1)     O'Leary's Employment Applications, 2002-2004

In December 2002, O'Leary applied for the Deputy Chief Clerk V position[4] and was granted an interview; however, OCA ultimately hired a Hispanic female. Reply to Def's 56.1 Statement and Statement of Additional Facts ("Pl.'s Reply to Def's 56.1") ¶ 2; Pl.'s Opp'n 8. Thereafter, on March 5, 2004, O'Leary applied for the position of Chief Clerk VII of the Bronx County Supreme Court.[5] Def.'s 56.1 Statement ¶ 12. All seventy-seven applications received, including O'Leary's, were sent to the interview panel: three of the four interviewers were Caucasian, and three of the four were women. Def's 56.1 Statement ¶ 12. Twenty-four individuals were invited to interview on May 27, 2004, but Plaintiff was not one of them. Pl.'s Reply to Def.'s 56.1 Statement ¶¶ 12-14, 39; Am. Compl. ¶ 16. On July 12, 2004, OCA announced its selection of a Hispanic female for the Chief Clerk VII position. Pl.'s Opp'n 6.

Also in March of 2004, O'Leary applied for the position of Chief Clerk VII of the Kings County Supreme Court.[6] Def.'s 56.1 Statement ¶ 21. Of the seventy-two applications for this position, ten people were interviewed for this position, but O'Leary was not one of them. Def.'s

---

[3] In Plaintiff's Statement of Particulars submitted to the EEOC with her charge, Plaintiff claims she applied for a total of <u>nine</u> positions from 2002-2006. See Compl. ¶¶ 16, 17, 23. However, because the Amended Complaint discusses only <u>eight</u> positions, I limit my analysis to the positions on the record before me.

[4] The record does not provide any additional information about this position—i.e., job description, qualifications, interview panel, etc. Another female, who at the time of hire only possessed a high school diploma, was hired for this position. Her race is not disclosed in the record. Affidavit of Eden Fizgibbons Mauro, Plaintiff's attorney, Apr. 30, 2007. ¶¶ 11-12.

[5] Chief Clerk VII is the highest-ranking non-judicial position in New York Civil, Criminal and Family Courts. Chief Clerk VII employees serve in a confidential capacity and are responsible for managing court operations related to case processing, budget and payroll preparation, personnel management, and employee relations, deployment of non-judicial personnel, coordination with non-court agencies, and for performing other related duties. Chief Clerk VII is also responsible for receipt, accounting, and disbursement of fines, fees, bail, and other public or custodial funds. Sullivan Aff. Ex. 8. The job qualifications include a bachelor's degree from an accredited college, six or more years of work experience involving managerial responsibilities such as human resource administration, budget preparation, and review of documents for compliance with policies, rules and procedures, or an equivalent combination of education and experience. Id.

[6] The job description for the Chief Clerk VII of Kings County is the same as the position in the Bronx Supreme Court. See supra note 5.

56.1 Statement ¶¶ 21, 24. O'Leary's application failed to note any managerial or supervisory experience required for this position. Def.'s 56.1 Statement ¶ 25.[7] Ultimately, OCA selected a Caucasian male for the position. Pl.'s Opp'n 6.

On March 16, 2004, O'Leary applied for the Court Clerk Specialist position in the New York County Supreme Court, Criminal Term.[8] Am. Compl. ¶ 14. The interview panel reviewed the forty-six applications submitted, and eleven people were selected to interview, but O'Leary was not chosen. Def.'s 56.1 Statement ¶ 32. A Black male received OCA's offer of employment. Pl's Opp'n 7.

Between March and May 2004, O'Leary repeatedly requested intervention by OCA's Director of Workforce Diversity. Am. Compl. ¶ 17. On May 28, 2004, O'Leary filed a written complaint with the New York State Unified Court System Office of Inspector General ("IG") alleging race, color, national origin, sex, age, and education-based discrimination in promotions. Pl.'s Reply to Def's 56.1 ¶ 1.

On July 19, 2004, O'Leary filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights alleging discrimination based on age and national origin. Sullivan Aff. Ex. 1. On April 29, 2005, O'Leary's EEOC Charge was dismissed, and she received a right to sue letter. Am. Compl. ¶ 22. On July 27, 2005, O'Leary commenced this action in this Court. Id. ¶ 23.

    (2)    <u>O'Leary's Employment Applications, 2004-2006</u>

O'Leary applied for four additional positions with OCA after filing her first complaint with the EEOC, and was granted interviews for three of these positions. However, ultimately, Plaintiff was not offered any of the positions she applied for. In November 2004, O'Leary applied for the position of Court Clerk Specialist of Fiduciary Clerk Guardianship in Bronx

---

[7] Plaintiff does not contest this statement in her Opposition to Defendant's 56.1 Statement. However, a colleague of the Plaintiff's contends that based on her education and experience, she was fully qualified for the Chief Clerk positions for which she applied. Affidavit of Michael Cusack, Apr. 27, 2007 ¶ 5.

[8] Court Clerk Specialists supervise a staff of Principal Court Clerks and other subordinate personnel and are expected to apply their expertise to complex problems in special terms, Appellate Divisions, or particular functional areas of the Surrogate's Court. Sullivan Aff. Ex. 13. The job announcement directed applicants to submit a 250-350 word writing sample addressing the question "What in your experience or personality has prepared you to do the job of a Court Clerk Specialist for the Criminal Term of Manhattan Supreme Court?" Sullivan Aff. Ex.16. Plaintiff failed to include this written statement in her application. Sullivan Aff. ¶ 52. The listing required the following minimum qualifications: one year of service in Principal Court Clerk, Principal Appellate Court Clerk or Principal Surrogate's Court Clerk title, admission to the New York State Bar, and three years of legal experience; or an equivalent combination of education and experience.

County ("Fiduciary Clerk"),[9] and interviewed for this position on February 15, 2005. Am. Compl. ¶¶ 24, 26.[10] On March 3, 2005, OCA appointed a Caucasian male to the position. Pl.'s Opp'n. 7.

In October 2005, O'Leary applied for the position of Chief Clerk VI for the Bronx County Surrogate's Court,[11] but did not receive an interview. Am. Compl. ¶¶ 30-31. None of the people who interviewed were Caucasian females (Id. ¶ 35), and a Hispanic female was ultimately selected for the position. Id. ¶ 33. In February 2006, O'Leary applied for the Court Clerk Specialist of Bronx County Surrogate's Court[12] (Am. Compl. ¶¶ 30(b), 36), and interviewed on March 1, 2006, but OCA selected a Black male for the position. Id. ¶ 37. In May 2006, O'Leary applied for the Court Clerk Specialist position in the Supreme Court, Matrimonial Bureau in Bronx County and interviewed for the position on May 22, 2006; however, the OCA selected a Black female. Id. ¶ 39.

On July 13, 2006, O'Leary filed a second charge of discrimination with the EEOC, which alleged incidents of OCA's continuing discriminatory conduct based on race and sex. Sullivan Aff. Ex. 3. On October 25, 2006, O'Leary's second EEOC charge was dismissed, and the Plaintiff received a right to sue letter. Am. Compl. ¶ 47. The Amended Complaint was filed on November 13, 2006. Id. at 12.

---

[9] The job description for this position was the same as the Court Clerk Specialist. *See supra* note 8.

[10] *But see* Affidavit of Eden Fitzgibbons Mauro ¶13 (stating that Plaintiff applied for Chief Clerk of Bronx Surrogate's Court). The Amended Complaint states Plaintiff applied for this position in October of 2005.

[11] This is the highest-ranking nonjudicial employee in Surrogate's Court. Chief Clerk VIs serve in a confidential capacity and are responsible for managing court operations related to case processing, budget and payroll prep, deployment and management of non-judicial personnel and employee relations, coordination with non-court agencies, and for performing other related duties. Chief Clerk VI is also responsible for receipt, accounting, and disbursement of fines, fees, bail, and other public or custodial funds. Sullivan Aff. ¶ 67. The position requires a bachelor's degree from accredited college/university, four years of work experience involving managerial responsibilities, such as human resource administration, budget preparation, and review of documents for compliance with policies, rules, and procedures, or equivalent combination of education and experience. Id. ¶ 68.

[12] The Court Clerk Specialist position involves supervision of a staff of principal court clerks and other subordinate personnel who apply expert knowledge to complex problems in special terms. The Bronx position was in the Probate Department. The position requires one year of service in Principal Court Clerk, Principal Appellate Court Clerk or Principal Surrogate's Court Clerk title; Admission to the New York State Bar and three years of legal experience; or an equivalent combination of education and experience.

## II.   STANDARD OF REVIEW

On a motion for summary judgment, the movant must establish that there is no genuine issue of material fact and the undisputed facts are sufficient to warrant judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 250 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A disputed issue of material fact alone is insufficient to deny a motion for summary judgment; it must be "material to the outcome of the litigation," *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir. 1986), and backed by evidence that would allow "a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Not every disputed factual issue is material in light of the substantive law that governs the case. *Deleon v. Putnam Valley Bd. of Educ.*, No. 03-CV-10274, 2006 U.S. Dist. LEXIS 3337, *16 (S.D.N.Y., Jan. 26, 2006) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment.") (internal quotations and citation omitted). On a summary judgment motion, the court resolves all ambiguities and draws all inferences in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir. 1987).

"In employment discrimination cases where it is necessary to explore an employer's intent and motivation, summary judgment may not be appropriate." *See generally Bhaduri v. Summit Sec. Servs.,* No. 05-CV-7024, 2006 U.S. Dist. LEXIS 79830, at *11-12 (S.D.N.Y. Nov. 2, 2006) (Baer, J.), *citing Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir. 1984). Consequently, affidavits and deposition testimony must be scrutinized for circumstantial evidence, which if believed, would support a finding of discrimination. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). However, Plaintiff must still produce sufficient evidence in support of her claim so that a rational juror could find in his or her favor. *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all [discrimination] cases."). *Goss v. Bernier,* No. 05-CV-9592, 2007 U.S. Dist. LEXIS 3206, *9 (S.D.N.Y. Jan. 18, 2007) (Baer, J.). However, "[e]ven courts mindful

of the fact that summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated have nonetheless granted summary judgment at the pretext stage where the plaintiff has provided no indication that any evidence exists that would permit the trier of fact to draw a reasonable inference of pretext." *Johnson v. Conn., Dep't of Corr.,* 392 F. Supp. 2d 326, 334 (citing *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985)).

### III.   DISCUSSION

In order to ascertain whether a rational juror could find in Ms. O'Leary's favor, it is necessary to consider evidence of how OCA conducted its interviewing and hiring, and what information was reviewed with respect to the qualifications of the applicants. While it is unnecessary for the Court to engage in a subjective review and determination of Ms. O'Leary's qualifications for the positions at issue here, I am charged with the difficult task of going into some detail to compare the qualifications of the Plaintiff with the qualifications of those who were accepted for the various positions based on the information (resume, writing sample) submitted to the Defendant.[13]

**A.   Title VII Violations**

(1)   <u>Plaintiff's Title VII Discrimination Claims Based on Race and Sex</u>

In disparate treatment cases, such as the instant one, the plaintiff is required to prove that the defendant had a discriminatory intent or motive.  The Supreme Court's shifting evidentiary burdens are "intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination." *Texas Dept. of Cmty Affairs v. Burdine*, 450 U.S. 248, 255 n.8 (1981).  Specifically, "[u]nder that scheme, a prima facie case is ordinarily established by proof that the employer, after having rejected the plaintiff's application for a job or promotion, continued to seek applicants with qualifications similar to the plaintiff's." *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 985-86 (1988) (citation omitted).

O'Leary's discrimination claim based on OCA's failure to hire[14] her and to hire only non-

---

[13] Defendant moves to dismiss Plaintiff's Title VII claim on the grounds that claims arising more than 300 days before Plaintiff's EEOC charges were filed are time barred, and therefore, only six of the eight positions Plaintiff complains of were timely filed.  However, I need not reach the merits of Defendant's procedural defense because I dismiss Plaintiff's claims on other grounds.

[14] This is a Title VII claim based on disparate treatment, premised on OCA's failure to hire or promote Ms. O'Leary.  The case law does not distinguish between the legal standards for a failure to hire claim and a failure to promote claim.  *See, e.g. Morris v. Ales Group USA, Inc*., No. 04-CV-8239, 2007 U.S. Dist. LEXIS 47674, *24-5 ("With respect to a discriminatory failure to hire or promote claim, . . . [i]n

Caucasian females both Caucasian and non-Caucasian males must be measured pursuant to the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).  To establish a *prima facie* case of discrimination under Title VII, the plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discriminatory intent.  *Sanders v. New York City Human Res. Admin.,* 361 F.3d 749, 755 (2d Cir. 2004).  It is well recognized that, on summary judgment, the plaintiff's burden of making a *prima facie* showing is "de minimis."  *Id.* (citation omitted).  If the Plaintiff establishes a *prima facie* case, she "creates a presumption that the employer unlawfully discriminated, and the burden of production will shift to the employer to proffer a nondiscriminatory reason for its action."  *James v. New York Racing Assn.*, 233 F.3d 149, 154 (2d Cir. 2000) (citation omitted).  If the Defendant provides evidence of a nondiscriminatory reason for its employment decision, the Plaintiff may still prevail if she provides "admissible evidence that would be sufficient to permit a rational finder of fact to infer that the employer's proffered reason is pretext for an impermissible motivation."  *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000) (vacating and remanding district court's dismissal of plaintiff's Title VII claims on summary judgment on the grounds that plaintiff presented evidence from which a rational juror could find for her); *cf. Altman v. N.Y. City Dep't of Educ.*, No. 06-CV-6319, 2007 U.S. Dist. LEXIS 32320, *19 (S.D.N.Y., May 3, 2007) (granting employer's motion for summary judgment on plaintiff's age discrimination claims; plaintiff put forth no comments or actions by any of her supervisors relating to her age that might give rise to an inference of discrimination, and the only evidence she put forth was conclusory allegations in her complaint).

Even with such a showing, however, "the plaintiff is not entitled to judgment unless []he shows that the challenged employment decision was more likely than not motivated, in whole or in part, by unlawful discrimination."  *Id.*  In fact, the Supreme Court has "cautioned that these shifting burdens are meant only to aid courts and litigants in arranging the presentation of evidence and that 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"  *Watson*

---

order to establish a prima facie case, the plaintiff must show 'that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of discrimination.' (citing *Texas Dep't of Cmty Affairs v. Burdine,* 450 U.S. 248, 254 (1981)).

*v. Ft. Worth Bank & Trust*, 487 U.S. 977, 986 (1988) (internal quotation and citation omitted). To demonstrate pretext, Plaintiff would have to show her credentials were so superior to those of candidates selected that no reasonable person would have chosen them over Plaintiff. *Byrnie v. Town of Cromwell*, 243 F.3d 93, 103 (2d Cir. 2001).

Here, Defendant does not contest O'Leary's membership in a protected class or that Ms. O'Leary suffered an adverse employment action - i.e. she was not hired. Rather, OCA contends that Plaintiff fails to establish a *prima facie* case of race or sex-based discrimination here because she fails the last two prongs set forth in *McDonnell Douglas Corp.*—she was not qualified for four out of the seven positions,[15] and for the remaining three where she did meet the minimum qualifications, she cannot show that OCA's failure to hire her gives rise to an inference of discrimination.

a.  *Chief Clerk VII Positions*

Plaintiff applied for two Chief Clerk VII positions[16] in March 2004—one in Bronx County Supreme Court, Civil Term, and the other in the Kings County Supreme Court. Chief Clerk VII is the highest ranking non-judicial employee in New York City's Civil, Criminal, and Family Courts responsible for "managing court operations related to case processing, budget and payroll preparation, personnel management and employee relations, deployment of non-judicial personnel, coordination with non-court agencies, and for performing other related duties." Sullivan Aff. ¶ 28. According to the job announcement, "[t]o qualify for appointment as a Chief Clerk VII [in either county], a candidate must have a Bachelor's degree from an accredited college and six years of work experience involving managerial responsibilities such as human resources administration, budget preparation, and review of documents for compliance with policies, rules, and procedures, or the equivalent combination of education and experience." Sullivan Aff. Ex. 7.

Plaintiff failed to establish a *prima facie* case of race or sex discrimination because she failed to show she was qualified for either position. Defendant received a total of 77 applications (including Plaintiff's) for the Bronx County position, all, including Plaintiff's, were submitted to the interview panel, and the panel selected 24 individuals (both men and women of different

---

[15] There is no discussion in the record of the requisite experience, or Plaintiff's qualifications for the Court Clerk V position, to which Plaintiff applied in December 2002. Thus, my discussion here is limited to the remaining seven positions at issue.

[16] *See supra* note 5 for a description of the Court Clerk VII position.

races) to interview but not Plaintiff. Sulllivan Aff. ¶¶ 31, 33. The resumes of the people invited to interview, according to Defendant, either met or exceeded the minimum qualifications for the two positions in the job announcements, particularly with regards to the managerial and supervisory experience. Id. ¶ 34. Plaintiff's resume and application, on the other hand, simply listed prior positions in the court system which do not typically perform the duties required by the Clerk VII position. *See* Sullivan Aff. Ex. 6. A Hispanic female was ultimately selected for the position in the Bronx County Supreme Court, and unlike Plaintiff, the selected candidates' resumes provided information that illustrated substantial supervisory and managerial experience. For example, the Hispanic female selected for the Bronx Supreme Court noted that she had ascended through a series of three increasingly more responsible court managerial positions,[17] had a total of seventeen years of managerial experience in court operations and specialized units, and developed and supervised the first child protective/permanency planning unit in the state. Sullivan Aff. ¶ 37. Similarly, the resume of the Caucasian male selected for the Kings County position states *and describes* the requisite managerial and supervisory experience,[18] while Plaintiff failed to list any managerial experience.

"Whether an individual is 'qualified' for a job must be assessed in relation to the criteria the employer has specified for the position, not criteria that seem reasonable to the litigant, or to this Court." *Sarmiento v. Queens College*, 386 F. Supp. 2d 93, 97 (E.D.N.Y. 2005) (citations omitted). "Defendant's decisions regarding the professional experience and characteristics sought in a candidate, as well as the search committee's evaluation of Plaintiff's qualifications, are entitled to deference." *Id*. at 97-98. The Court's role "is not to evaluate the wisdom of personnel decisions, but merely to determine whether the decisions were rational and non-discriminatory." *Id*. (citations omitted). O'Leary has failed to show that she was qualified for the position and thus, cannot support a *prima facie* case for either sex or race discrimination.[19]

---

[17] Associate Court Clerk, Principal Court Clerk, and Deputy Clerk of Bronx Family Court.

[18] In 1996, he became Court Clerk Specialist where he supervised twenty subordinate personnel. Sullivan Aff. ¶ 46, n.7. In 2001, he became First Deputy Chief Clerk of Civil Term, where he had managerial responsibility for all aspects of the Civil Term, including management of over 40,000 cases and implementation of a case management pilot project and comprehensive civil justice program. Id.

[19] Furthermore, the fact that a woman was chosen for the position in the Bronx undermines Plaintiff's allegation that OCA had gender-motivated discriminatory reasons for not interviewing her for that position. Similarly, the fact that a Caucasian male was chosen for the position in Kings County undermines Plaintiff's contention that OCA discriminated based on race. In addition, two of the four members of the interview panels for each position were Caucasian females.

*b.      Court Clerk Specialist Positions*

Plaintiff applied to four Court Clerk Specialist Positions in different courts between 2004 and 2005.[20]  According to the job announcement, Court Clerk Specialists work in the largest New York Supreme, Surrogate's, and Appellate Courts, or in counties with populations exceeding 400,000 where they supervise a staff of Principal Court Clerks and other subordinate personnel.[21]  The interview panel rated Plaintiff as "qualified" for three of the four positions,[22] and invited her to interview for those three positions.  The only instance where Plaintiff was denied an interview for this position was in the New York Supreme Court, where Plaintiff, unlike all the applicants chosen for an interview, failed to submit a written statement with her application, and thus fails to show that she was qualified.[23]  Therefore, I review these three positions below—Court Clerk Specialist of Fiduciary Clerk Guardianship in Bronx County, Court Clerk Specialist of Bronx County Surrogate's Court, and Court Clerk Specialist in Supreme Court, Matrimonial Bureau in Bronx County—solely on the fourth prong of *McDonnell Douglas Corp.* for an inference of discrimination and find that Plaintiff fails to meet her burden here.

(1)    Court Clerk Specialist of Fiduciary Clerk Guardianship in Bronx County

While the interview panel rated Plaintiff as "qualified" for this position, the candidate hired was rated as "highly qualified."[24]  The applicant ultimately selected had 25 years of experience as a Court Clerk, while Plaintiff had only two years experience in this position.  Also,

---

[20] (1) Court Clerk Specialist, New York County Supreme Court, Criminal Term (March 2004); (2) Court Clerk Specialist of Fiduciary Clerk Guardianship in Bronx County ("Fiduciary Clerk") (Nov. 2004); (3) Court Clerk Specialist of Bronx County Surrogate's Court (Feb. 2006); (4) Court Clerk Specialist in Supreme Court, Matrimonial Bureau in Bronx County (May 2006).

[21] *See supra* note 8, for a description of the Court Clerk Specialist position, and the requisite qualifications for the position.

[22] Plaintiff was denied an interview for the Court Clerk Specialist position in the New York County Supreme Court, Criminal Term, applied for in March 2004 because she did not submit the written statement describing her experience that the announcement specifically indicated was required.  *See* Sullivan Aff. Ex. 12 ("INTERESTED PERSONS MEETING THE MINIMUM QUALIFICATIONS ARE ENCOURAGED TO SUBMIT A UCS-5 APPLICATION. . . A RESUME AND A WRITING SAMPLE.").  Therefore, because Plaintiff did not comply with the specific directions and requirements on the job announcement, the interview panel was in no position to grant her an interview, thus, she was not technically "qualified" pursuant to the job announcement and fails to establish a *prima facie* case.  I will consider the remaining three Specialist positions in turn.

[23] *See supra* note 8.

[24] The candidate chosen had an M.B.A., and also served as Principal Court Clerk in New York County Supreme Court, Criminal Term, where he monitored activity and performance of Court Clerks, supervised subordinate employees, and reviewed documents for compliance with court rules and regulations.

11

at least two of the eight people selected for interview were Caucasian females.[25]  Of the seven people on the panel, four were female, five were Caucasian and two of them were Caucasian females.  Sullivan Aff. ¶ 62.  The totality of circumstances presented here would not permit a rational trier of fact to infer a discriminatory motive.  *See, e.g., Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (mandating a case-by-case approach with the court examining the entire record to determine whether plaintiff could satisfy the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff").

      (2)    <u>Court Clerk Specialist of Bronx County Surrogate's Court</u>

Once again, Plaintiff fails to show that OCA's failure to hire her occurred under circumstances that give rise to an inference of discrimination and she does not allege any.  Three of the nine individuals who were selected to interview for this position were Caucasian females.[26]  Of the five people on the interview panel, one was female and four were males; four were Caucasian, and one was Black.  Further, although Plaintiff was deemed "qualified" for this position by the interview committee, the candidate selected, a Black male, was rated as "highly qualified" by the same panel.  The panel noted that he had "extensive Surrogate's court experience [where Plaintiff had none], excellent technical and procedural knowledge [and a] law degree," with no demonstrated weaknesses.[27]  Sullivan Aff. ¶ 79.  Thus, Plaintiff does not show that OCA's decision to hire the Black male gives rise to an inference of discrimination.

      (3)    <u>Court Clerk Specialist in Supreme Court, Matrimonial Bureau in Bronx County</u>

Here again, Plaintiff has failed to show that the circumstances give rise to an inference of discrimination based on race or sex.  Plaintiff was selected to interview for this position, and the interview panel rated her as "qualified."  Of the eleven candidates selected to interview, five, including Plaintiff, were Caucasian females.  Of the five people on the panel, one was female, and four were males; four were Caucasian, and one was Black.  Plaintiffs' credentials were not

---

[25] The race of a third female who declined to be interviewed is unknown.

[26] Ten people, including Plaintiff, were selected to be interviewed for this position.  Nine people accepted the invitation.  Six of the nine people were female, and three were male.  Five of the nine candidates were Caucasian and four were Black.  Three, including Plaintiff, were Caucasian females.

[27] The selected candidate's qualifications were superior to that of Plaintiff's.  He worked in Surrogate's Court for twenty-three years, in court management positions: from Court Clerk, to Associate Surrogate's Clerk, to Principal Surrogate's Court Clerk.  He was Principal Surrogate's Court Clerk for twelve years, and headed various departments, and had a number of years supervising other Surrogate's Court personnel. He was a 2005 recipient of the *Bernard Botien Award*, one of the highest honors a non-judicial employee can receive, for outstanding contributions to court administration.

superior to those of the candidate selected. Indeed, there is evidence that the candidate chosen had far superior credentials to those of the Plaintiff.[28] The interview panel rated the chosen candidate as "highly qualified," noting she had "[e]xtensive knowledge of matrimonial practice[,]" "[e]xcellent management skills[,] and had "[d]emonstrated outstanding ability to implement new initiatives." Sullivan Aff. ¶ 85. In contrast, Plaintiff's resume did not mention familiarity with case processing and management practice in general, nor with the department or matrimonial practices in particular. Further, Plaintiff did not have a comparable level of supervisory experience and responsibility in contrast to the applicant who was hired, a Black female.

c.     *Chief Clerk VI Position*

Finally, Plaintiff fails to establish a prima facie case of sex and race discrimination because she has not established that she was qualified for the Chief Clerk VI of the Bronx County Surrogate's Court position. Her resume did not reflect the requisite court managerial, budgetary, supervisory, or human resources experience for this position, the highest nonjudicial employee in the Surrogate's Court. The candidate who was ultimately selected for this position, a Hispanic female, had risen through the ranks of several court managerial positions of increasing responsibility for a total of twenty-seven years of experience in the Bronx Surrogate's Court, compared to Plaintiff's two. Thus, O'Leary has not met her burden here.[29]

**B.     Plaintiff's Retaliation Claim**

Plaintiff also alleges that Defendant retaliated against her for protected activities, e.g. filing an EEOC charge and commencing this lawsuit, and that as a consequence, the Defendant undertook or caused Plaintiff to suffer adverse employment actions by refusing to grant her interviews or otherwise consider her applications for Chief Clerk, Deputy Chief Clerk, or other

---

[28] The candidate chosen had already been a Court Clerk Specialist in the same department for a year; during that time she had devised a system for efficient reassignment of cases, taken steps to heighten efficient processing of matrimonial actions, trained and supervised personnel, created standards and goals for the department, and prepared statistical reports to relating to its operation. Sullivan Aff. ¶ 86. In her five years as high-level court manager in Bronx Supreme Court, she assisted in the development and implementation of a case tracking system, co-authored a case management manual, compiled statistical reports, and recommended and implemented new court policies. She also had significant supervisory experience: she was responsible for supervising/evaluating fifty employees, and trained staff in software systems. Id. She had also been a recipient of the *Botein Award* in 2003. *See supra* note 26, for a description of this award.

[29] Further, the interview panel for the Chief Clerk VI position was comprised of five members, four of whom were Caucasian, and two of whom were female; one was a Caucasian female.

positions. An employee must show four elements to establish a *prima facie* retaliation claim: (1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered adverse employment decisions; and (4) there was a causal connection between the protected activity and the adverse employment action. *Manoharan v. Columbia University College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988). "A plaintiff is engaged in 'protected activity' under Title VII if she opposes conduct by her employer with a 'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'" *Collette v. St. Luke's Roosevelt's Hospital,* No. 00-CV-4864, 2002 U.S. Dist. LEXIS 18164, * 7-8 (S.D.N.Y. Sept. 26, 2002) (citing *Manoharan*, 842 F.2d at 593). While the employee need not establish that the opposed conduct was a violation of Title VII to show she was conducting protected activity, she must demonstrate a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law. Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Id.* at 593 (citations omitted).

Plaintiff fails to establish that there was a causal connection between filing her EEOC claim or commencing this lawsuit, and being denied certain positions. Plaintiff applied for four positions after filing her first complaint with the EEOC in July 2004,[30] and albeit somewhat strange to me was for the first time in this saga granted interviews for three of these four positions, and, with respect to the fourth position, she did not submit a writing sample pursuant to the application guidelines and was not invited to interview.[31] Such evidence does not support a causal connection between Plaintiff's EEOC charge and denial of these positions. Further, the facts on this record show that the Plaintiff, as well as other Caucasian women, was interviewed for three of the positions at issue. Thus, Plaintiff's retaliation claim fails as a matter of law.

---

[30] Plaintiff applied for the following positions after filing her first charge with the EEOC: (1) Court Clerk Specialist of Fiduciary Clerk Guardianship in Bronx County ("Fiduciary Clerk") (Nov. 2004); (2) Chief Clerk VI of Bronx County Surrogate's Court (Oct. 2005); (3) Court Clerk Specialist of Bronx County Surrogate's Court (Feb. 2006); (4) Court Clerk Specialist in Supreme Court, Matrimonial Bureau in Bronx County (May 2006).

[31] Plaintiff was granted interviews for the following positions: Chief Clerk VI of Bronx County Surrogate's Court; Court Clerk Specialist of Bronx County Surrogate's Court; Court Clerk Specialist in Supreme Court, Matrimonial Bureau in Bronx County.

### C. Violations of New York State and City Human Rights Law

Under 28 U.S.C. §1367(c), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). *Gibbs* directed federal courts, in determining whether to exercise jurisdiction over a case involving state-law claims, to "consider and weigh in each case, at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 445 (2d Cir. 1998) (citing, *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 262 (quoting *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7). Since Plaintiff's Title VII claims are dismissed, this Court declines to exercise jurisdiction over the pendant state law claims.

I have spelled out the undisputed facts in detail. While Defendant has prevailed in the last analysis, Plaintiff's applications and continuing rejection, coupled with the fact that only after she filed her first EEOC complaint was she granted interviews for the positions discussed herein,[32] gave me pause.

### IV. CONCLUSION

For the above reasons, summary judgment is granted, and the amended complaint is dismissed.

The Clerk of the Court is instructed to close this case and remove it from my docket.

**IT IS SO ORDERED.**

New York, New York
August ___, 2007

_____
U.S.D.J.

---

[32] *See supra* note 4, for a discussion of why the Deputy Chief Clerk V position, for which Plaintiff applied in December 2002, and was granted an interview, is not discussed in this opinion.

15